Turney, J.,
delivered the opinion of the Court.
*728 The decree of the Chancellor declaring void the proceeding of the County Court, and perpetually enjoining the execution from said court, is a proper one.
In the latter part of the year 1861, Coalby Dalton and J. H. Dail, adminstrators of the estate of John Rucker, deceased, and Cornelia Dail, wife of said J. H., filed their bill in the County Court of Grainger County, against Mahala Rucker, the widow, and Perry Rucker, Barnett Farmer and wife, Mary, formerly Rucker; Nelson Rucker, Martha Rucker, Frank Rucker, James Ruck-er, Ruth Rucker, and Robert Rucker, the last five minors, without regular guardian, and also Isaac Payne and wife Mahala, residents of Kentucky; James Hodges and wife Emily, and John Rucker, residents of Texas
The defendants, and complainant, Cornelia Dail, are the widow and children and heirs at law of Jno. Rucker, deceased.
The bill seeks to sell ten slaves belonging to said estate, for partition, upon the ground that they can not be divided, and “that a sale for division is indispensably necessary;” it charges that the minors have no regular guardian, but that application will be made at the next ensuing term, for the appointment of one; it prays that publication be made, and if no regular guardian be appointed, that guardians ad litem be appointed for the minors, &c. The bill is not sworn to. There is nothing in the record showing the appointment of regular guardians, or guardians ad litem for the minors. In January, 1862, a paper purporting to be the answer of the minors named above, is filed, and commences: “These respondents, answering by their guardian, say,” &c., and *729 this is not subscribed to by any one. The affidavit thereto, in the usual form, is sworn to by Mahala Rucker.
At the February Term, 1862, this order appears: “In this case, the death of Perry H. Rucker is suggested and proved to be true; and on motion of complainants, it is ordered the cause be revived against Minerva JST. Rucker, his widow, and John W. Rucker, Mary A., Virginia and Sarah M. Rucker, his children and heirs at law, and that scire facias issue to warn them.”
At the March Term, 1862, this order appears: “In this case, it appearing to the Court that scire facias has been regularly served on the widow and heirs of Perry Rúcker, and the widow failing to answer, judgment pro confesso is entered against her, and on motion of complainant, L. M. Ellis is appointed guardian ad litem of the minor heirs of said Perry Rucker; and it is further ordered, on motion, that judgment pro confesso be entered against the other defendants, except Mahala Ruck-er, guardian, &c., who has filed her answer; and thereupon the said L. M. Ellis, guardian, &c., files his answer.”
The appearance of Ellis, even though he had been properly a guardian ad litem, did not affect the minors, nor bring them before the Court, as he could not, by any act of his, waive the service of process. 1 Swan, 75; 2 Swan, 197.
The personal representative of Perry Rucker, is not before the Court, formally nor informally; that he should have been, if not absolutely necessary, was highly proper.
The suit in the County Court was revived against the widow and heirs of Perry Rucker on mere motion, and *730 without the issuance of sdre jadas, and amounted to no revivor.
By the terms of the order proposing to revive against the widow and heirs of Perry Rucker, and after the re-vivor, a sdre fados is directed to “issue to warn them.” "We are wholly unable to discover any necessary office of a sdre fadas at this stage of the proceedings, and declare it to have been a .nullity.
The order appointing a guardian ad litem “for the minor heirs of Perry Rucker,” not naming them, is a nullity. 1 Swan, 484. The answer of the guardian ad litem, Ellis, did not cure this error. No guardian ad litem could have been properly appointed until after service of process upon the minors, bringing them before the Court, and making them parties.
There was no publication as to non-residents — the principal defendant in the suit, and the Clerk or Commissioner who sold the slaves, saying, in his answer, he has no recollection of it, and cannot say, from his memory, that he did make publication, but supposes he did so, because it was his duty to have done so. This is said in response to the positive allegation of the bill in this cause that publication was not made. There is in the record no order for publication. The sale is ordered upon the report of the Clerk, based upon the testimony of two Avitnesses, neither of whom seems to have known the slaves, and who simply gave it as their opinion, without' assigning any sufficient reason, that “the slaves should be sold, and the proceeds distributed and placed at interest for said minors.”
By the decree, no notice or advertisement of time of *731 sale is directed, nor is there any sufficient evidence of notice or advertisement of sale. It directs “that R. P. Moore sell said slaves to the highest bidder,” &c., -without showing in what capacity or office he is to sell.
It is manifest, from the foregoing errors and omissions, that the sale of the slaves was absolutely void.
A purchaser at a sale under a decree of Court may demand a good title, and if the Court is able to give him that, he has no reason to complain that the proceedings are irregular; that is nothing to him. This, of course, can only be done when the parties interested are all before the Court, and a case is made out to give the Court jurisdiction; otherwise the Court could not decree him a good title, and for that reason would not compel him to pay his money. Swan v. Newman, 3 Head, 288,
All the parties in interest were not before the Court, by the proceedings in the County Court, nor is a case to give the Court jurisdiction made out, as we have already shown.
As once before said, the bill to sell was not sworn to. Section 2247 of the Code provides: “ If any executor or administrator think it necessary to sell or dispose of any slave or slaves, for the payment of debts, or because it is for the interest of the legatees, or those entitled to distribution, to make sale, or because a division cannot be made among the legatees or distributees of the estate without a sale; in all such cases he shall file his bill or petition on oath, to obtain a decree for the sale of such slaves; and the suit so commenced shall be conducted as other suits in Chancery.”
It was necessary to the appointment of guardians ad *732 litem, that tbe bill in the County Court should have been sworn to. And as to non-residents, before publication could be made or ordered, the fact of non-residence must appear, either by affidavit to the bill or petition, or by an independent affidavit of the fact, neither of which appears in the record.
The defendant, N. P. Moore, under the order of the County Court, sold the slaves of the estate of John Pucker, deceased. Complainant, Mahala, his widow, purchased six of said slaves, and gave her note, with security, for the sum of $3,590.60. Judgment by motion was taken on said note, and execution issued. She, with her securities, have instituted this suit in the Chancery Court at Rutledge, to enjoin the enforcement of the execution, charging that the proceedings in the County Court are void.
The judgment of the County Court is void. By section 4205 of the Code, the County Court is empowered to “give judgments or decrees upon notes and obligations taken in the progress of a cause.”
The County Court is empowered to render judgment upon notes taken as prescribed in the above section, upon motion and without notice. This being a summary proceeding, “every fact which is necessary to give the court jurisdiction and to authorize the judgment, must be set out in the judgment as having been made to appear.” 5 Hum., 426; 3 Hum., 315; 3 Cold., 219.
The decisions of this Court, through a long series of years, have been uniform on this subject.
Does the judgment attacked in the bill fill the measure of this well defined and well settled rule? We *733 think not. It is in the style, R. P. Moore, Special Commissioner, v. Mahala Rucker, and recites: •“ This day came the Commissioner in this case to sell the negroes belonging to the estate of John Rucker, deceased, and presented a note under seal on Mahala Rucker, J. H. Bail, T. J. Rucker, and N. J. Rucker, which was executed by said parties to R. P. Moore as Commissioner aforesaid, for six negroes, which said note is in the words and figures following,: $3,590.60. Six months after date we or either of us promise to pay R. P. Moore, Clerk and Commissioner, who sold the slaves belonging to the estate of John Rucker, three thousand five hundred and ninety dollars and sixty cents. This note is executed for boy Westley, girls Harriet, Letta and Amanda, and two children, and a lien is declared on said negroes until the purchase money is fully paid. April 3, 1862. Mahala Rucker, her X mark [seal.] G. H. Hail, [seal.] J. T. Rucker, [seal.] 1ST. J. Rucker, [seal.] And it appearing to the Court that said note is unpaid, on motion of said Moore by attorney, the Court is pleased to order that he recover of the said Mahala Rucker, G. H. Dail, J. T. Rucker, and N. J. Rucker, (the motion being made against all of said parties) the sum of $4,107.14, (four thousand one hundred and seven dollars and fourteen cents), together with all the costs of the motion, for which execution may issue.”
In this judgment it does not appear that such cause as that at its head is pending, and if we look to the record for proof of the existence of such cause, we do not find it; besides, the rules, as we have already seen, does not allow that we look to the record outside the *734 judgment for this or other matter touching the regularity of the judgment.
The judgment does not show any appointment of Moore as Special Commissioner.
It does not show by caption nor in its body of what court Moore is Special Commissioner or Clerk.
It does not show under what authority he sold the slaves, nor at whose suit, nor for whose benefit, nor for what purpose.
It recites that the note was executed to Moore as Commissioner to sell the slaves belonging to the estate of J^o. Kucker, deceased, but does not recite nor refer to any proceeding in any court in which either the administrator or the heirs at law of Jno. Kucker are- parties.
It recites no order or decree for the sale of the slaves, all which recitals are necessary to give the Court jurisdiction and to authorize the judgment.
There may be other objections to the judgment, but the sufficiency of those we have mentioned makes it unnecessary to notice them.
The decree of the Chancellor is affirmed.