CLYDE O. BROWN *v.* PAMELIA C. BROWN *et al.*

(*Knoxville,* September Term (May Session) 1954.)

Opinion filed June 10, 1955.

On Rehearing August 2, 1955.

602

FERDINAND POWELL, JR., and WARREN R. WEBSTER, both of Knoxville, for appellant.

ANDERSON & ANDERSON, of Knoxville, for appellees.

Mr. Special Justice Robert S. Clement delivered the opinion of the Court.

This suit was filed by the complainant Clyde O. Brown in the Chancery Court of Knox County primarily for the purpose of enjoining the defendant Pamelia C. Brown from prosecuting a petition for contempt which the defendant Pamelia C. Brown had filed in the Circuit Court of Knox County in an effort to enforce a decree of that Court against the complainant Clyde O. Brown.

The controversy arises out of a divorce action between the parties, which the husband Clyde O. Brown commenced in February of 1952 by filing his bill for an absolute divorce against the wife Pamelia C. Brown on the ground of cruel and inhuman treatment. In that bill he averred that the parties had entered into a property settlement agreement, one of the provisions of which was that his wife would receive a certain parking lot located on West Church Street in Knoxville, which the parties owned as tenants by the entireties. Among his prayers was a request that the Court approve the property settlement agreement. He also prayed that the custody and control of the two minor children of the parties be adjudicated by the Court in whatever manner the Court deemed to be in the best interest of the children; and he indicated his willingness to support these children.

After the disposition of numerous preliminary matters not material here, the wife, Pamelia C. Brown, filed her answer to this bill for divorce. She denied quite vigor-

ously the allegations on which her husband based his suit for divorce. She made no mention of the alleged property settlement agreement. She did, however, allege that her husband was a "man of means," and that he was able to support the defendant and their children and should be required to do so. She did not ask that her answer be treated as a crossbill, and she made no formal prayers for relief.

In February of 1953, after a series of bitterly contested proceedings, the Circuit Court entered a decree granting the husband Clyde O. Brown an absolute divorce from the wife. The Court, however, awarded custody of the minor children to the defendant wife and required the husband to pay "alimony" in the amount of $125 per month for the maintenance and support of the wife and the children. In addition the Court suggested that the parties attempt to arrive at a property settlement, but provided that in the event no such agreement was submitted to the Court, the Court would "pass upon the property rights" between the parties. The Court expressly retained the case on its docket for the purpose of arriving at some disposition of the property belonging to the parties.

The wife filed various supplemental pleadings and petitions in an effort to reopen the case and defeat the husband's suit for divorce; but the relief she sought in these matters was denied. Finally the Circuit Court in May of 1953 entered a final decree, once more decreeing the exclusive custody of the minor children to the wife and ordering the husband to pay as "alimony, for the support and maintenance of defendant and said two dependent children, the sum of $125.00 per month * * *."

The Circuit Court further ordered that the equity in the parking lot, "held in the joint names of complainant

and defendant should be decreed to defendant as alimony.'' To carry out this portion of its decree the Court, after setting forth a detailed description of the property, decreed that all of the right, title and interest of the husband in the parking lot, ''be divested out of him and vested in the defendant Pamelia C. Brown, and to perfect defendant's title, the complainant will execute and deliver to defendant a proper deed conveying his interest in said property, the defendant assuming all indebtedness resting thereon.''

No mention was made in this decree of any property settlement agreement between the parties.

The wife then perfected an appeal from this decree to the Court of Appeals, which affirmed the decree. She petitioned this Court for certiorari, but the writ was denied.

The husband filed no appeal. At no stage of the proceedings in the Circuit Court, or in the appellate courts, does it appear that he in any way challenged the validity of the decree of the Circuit Court or the power or jurisdiction of that Court to enter it.

After the remand of the case to the Circuit Court the wife sought to obtain from the husband a deed to the parking lot as provided in the decree of that Court. Apparently the husband refused to execute such a deed. The wife then filed a petition for contempt in the Circuit Court in which she set forth the provisions of the decree of that Court and alleged that the husband had refused to comply therewith. She prayed that an attachment issue for the body of the husband; and that he be required to execute the deed as provided in the Circuit Court's decree, and that on his failure to do so he be taken into custody until the order of the Court was complied with.

The attachment issued, requiring the husband to appear before the Circuit Court on June 5, 1954, to answer the petition for contempt. The husband presented a bond for his appearance as required by the fiat of the Circuit Court. However, he filed no answer or other pleading to the petition for contempt. On June 5, 1954, the husband, on the basis of the original bill in this cause, obtained a fiat from the Honorable Charles E. Dawson, Chancellor, holding the Chancery Court at Knoxville, and an injunction was accordingly issued restraining the wife from further prosecuting her petition for contempt in the Circuit Court.

In his original bill in this suit the husband alleges that the decree of the Circuit Court, in so far as it purported to divest him of his title to the said parking lot and ordered him to execute a deed to his wife of all of his interest therein, was void, because it was, in that regard, beyond the jurisdiction of the Circuit Court for the reason that the relief granted was alleged to be outside the scope of the pleadings and for the further reason that the statutes forbid the courts from awarding a wife alimony when the husband is granted a divorce.

To this bill the wife filed a demurrer on the grounds: (1) that there was no equity on the face of the bill; (2) that the Chancery Court had no jurisdiction to hear the cause, but rather that the exclusive power to inquire into the matters alleged in the bill was in the Circuit Court of Knox County; (3) that the decree of the Circuit Court did nothing more than carry out a property settlement agreement entered into by the parties; (4) that the husband at no time during the proceedings in the Circuit Court or in the appellate courts objected to the entry of the decree by the Circuit Court, and that he was accordingly barred from raising the question in this

suit; (5) that the bill herein amounted to a collateral attack on the decree of the Circuit Court, and that such an attack could not be made by proceedings such as this; and (6) that the award of the property in question to the wife was for the support of the minor children of the parties and was therefore valid.

The Chancellor sustained the wife's demurrer and dismissed the husband's bill, without stating his reasons for so holding. The husband has seasonably perfected an appeal to this Court from the Chancellor's decree.

At the outset we are met with the question of whether or not a Chancery Court has the power or jurisdiction to enjoin a party to an action in the Circuit Court from proceeding with a petition for contempt in that Court.

■ Patently the Chancery Court has no power to sit as a court of review to correct judgments of the Circuit Court which are merely erroneous. Nor does it have the power to interfere with the Circuit Court itself in the performance of its duties and functions. But the original bill in this case alleges that the judgment of the Circuit Court is void for want of jurisdiction, and it seeks to reach not the Circuit Court itself but the defendant herein who filed the petition for contempt in the Circuit Court.

■ Contempt proceedings, such as the proceeding in the Circuit Court in this case, to compel a party to abide by the decree of a court are civil and not criminal in their nature. *Chappell* v. *Chappell*, 37 Tenn. App. 242, 261 S. W. (2d) 824. Therefore a bill to enjoin a party from prosecuting such a petition does not amount to an interference with the Court which entered the original judgment, since it seeks to reach only the party involved, and not the Court itself.

Such contempt proceedings partake of the nature of a supplemental process, *Chappell* v. *Chappell*, 37 Tenn.

610

App. 242, 261 S. W. (2d) 824. A bill to enjoin the prosecution of such a petition for contempt is thus closely analogous to a bill to enjoin an execution on a judgment of the Circuit Court. It is well settled in this state that the Chancery Courts have the jurisdiction to enjoin an execution from a Circuit, or other court of coordinate jurisdiction, where that execution is based upon a void judgment. *Douglass* v. *Joyner*, 60 Tenn. 32; *Wooten* v. *Daniel*, 84 Tenn. 156; *Rucker* v. *Moore*, 48 Tenn. 726.

In addition if the judgment of the Circuit Court which the defendant wife sought to enforce is void for want of jurisdiction, it can bind no one and a disobedience of it would not be a contempt. *Howell* v. *Thompson*, 130 Tenn. 311, 170 S. W. 253; *Churchwell* v. *Callens*, 36 Tenn. App. 119, 252 S. W. (2d) 131; Note, 12 A. L. R. (2d) 1059.

The Chancery Court therefore had the jurisdiction to enjoin the defendant wife from proceeding with her petition for contempt in the Circuit Court, if the judgment of the Circuit Court is void for want of jurisdiction as the complainant alleges.

A bill seeking to enjoin a judgment on the ground that it is on its face void for want of jurisdiction is a direct and not a collateral attack on that judgment. *Tennessee Marble and Brick Company* v. *Young*, 179 Tenn. 116, 163 S. W. (2d) 71; *Myers* v. *Wolf*, 162 Tenn. 42, 34 S. W. (2d) 201; *Jordan* v. *Jordan*, 145 Tenn. 378, 239 S. W. 423. The alleged want of jurisdiction of the Circuit Court in this case appears on the face of the record. If the judgment of the Circuit Court was beyond its jurisdiction as alleged, it is thus not merely voidable and thus subject only to direct attack; it is void and subject to collateral attack as well. *Hamm* v. *Hamm*, 30 Tenn. App. 122, 204 S. W. (2d) 113, 175 A. L. R. 523.

 The first ground on which the complainant husband attacks the validity of the judgment of the Circuit Court in this case is that the judgment in so far as it purported to award the property in question to the defendant wife was beyond the scope of the pleadings. It is true, as the complainant argues, that a judgment or a decree which is beyond the fair scope of the pleadings is void. *Lieberman, Loveman & Cohn* v. *Knight,* 153 Tenn. 268, 283 S. W. 450, 452; *Terrell* v. *Terrell,* 192 Tenn. 317, 241 S. W. (2d) 411. In determining whether or not a judgment is beyond the scope of the pleadings, those pleadings must be given a liberal construction with all reasonable intendments taken in favor of the judgment. *Myers* v. *Wolf,* 162 Tenn. 42, 34 S. W. (2d) 201. The policy underlying the rule seems to be that since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced.

But the complainant in this case certainly had notice that the Circuit Court might enter a judgment awarding this parking lot property to his wife. In fact he set up in his bill for divorce the existence of a property settlement agreement under which the wife was to receive this property and he asked that the Court approve that agreement. It is true that the wife did not admit the existence of such an agreement and made no formal prayers for alimony. However, she did expressly state that the husband was capable of supporting her and their children and should be required to do so.

██ ██ The Circuit Court in its decree awarding the parking lot property to the wife did not mention any property settlement agreement, and apparently was not simply incorporating such an agreement into its decree.

But such settlement agreements are not binding on the courts in awarding alimony, rather they are merely evidential in value, *Osborne* v. *Osborne,* 29 Tenn. App. 463, 197 S. W. (2d) 234; *Perry* v. *Perry,* 183 Tenn. 362, 192 S. W. (2d) 830. If the Court has jurisdiction to award alimony it may modify such agreements and award alimony as the statute directs, "according to the nature of the case and the circumstances of the parties". Tenn. Code Section 8446; *Doty* v. *Doty,* 37 Tenn. App. 120, 260 S. W. (2d) 411.

The property was described with sufficient particularity in the pleadings to be readily identifiable even though a detailed description by metes and bounds was not given. Nothing more is required.

The award of the parking lot property to the defendant wife by the Circuit Court was thus fairly within the scope of the pleadings, if the Court had the jurisdiction to make such an award.

The complainant husband, however, raises a far more serious question in his contention that the judgment awarding his wife the parking lot is void for want of jurisdiction because the statutes of this state forbid the courts, from awarding a wife alimony when her husband has been granted a divorce.

Section 8446 of the Code provides in part, "Whether the marriage be dissolved absolutely, or a perpetual or temporary separation be decreed, the court may make an order and decree for the suitable support and maintenance of the complainant and her children, or any of them, by the husband, or out of his property * * *." This provision does not empower the courts to award alimony to a *defendant* wife where her husband obtains an absolute divorce.

It is somewhat significant to note that this code section

was amended by Chapter 90 of the Public Acts of 1953 so as to allow the courts to divest the wife of her interest in property held jointly with the husband in certain cases where the husband is granted a divorce.

More important, however, Section 8449 of the Code provides,

"If the bonds of matrimony be dissolved at the suit of the husband, the defendant shall not be entitled to dower in the complainant's real estate, nor to any part of his personal estate, in case of his intestacy, nor to alimony."

█ The wife in such cases thus has no right to alimony and the husband is under no corresponding duty to provide it. Therefore, under the statutes of this state the courts, on granting a husband a divorce, have no power to award the wife alimony.

█ The policy underlying this provision is apparent. Divorce in this state is not a matter to be worked out for the mutual accommodation of the parties in whatever manner they may desire, or in whatever manner the Court may deem to be fair and just under the circumstances. It is conceived as a remedy for the innocent against the guilty. *Brewies* v. *Brewies,* 27 Tenn. App. 68, 178 S. W. (2d) 84. The unfortunate person against whom a divorce is granted may suffer not only the severance of his or her marital relations, but also the deprivation of those rights, such as alimony, which arise out of the marital relation. These provisions thus are intended to further the policy of rewarding the innocent and punishing the guilty. *Allen* v. *McCullough,* 49 Tenn. 174, 188. The statutes may in some circumstances seem unwise, and indeed even harsh, but it is not for the courts to decide the policy of the state in this regard.

The Circuit Court in this case had the general juris-

diction of the subject matter of divorce and alimony; but it could make no valid adjudication with reference thereto which was not within the powers granted to it by law. *Jordan* v. *Jordan*, 145 Tenn. 378, 239 S. W. 423. A distinction must be made in this regard between the mere erroneous exercise of a power granted, and the usurpation of a power where none exists. As this Court said in *Chickamauga Trust Company* v. *Lonas*, 139 Tenn. 228, 235, 201 S. W. 777, 778, L. R. A. 1918D, 451, quoting from 15 R. C. L. 853:

" 'One form of usurpation of power on the part of a court in rendering a judgment is where it attempts to disregard limitations prescribed by law restricting its jurisdiction. * * * Where a court is authorized by statute to entertain jurisdiction in a particular case only, and it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, in so doing it will not acquire jurisdiction, and its judgment will be a nullity and subject to collateral attack.' "

The Circuit Court in this case exceeded the powers conferred upon it by law. Its judgment awarding the wife alimony after granting the husband a divorce is not only beyond the powers conferred upon it by statute, but is also directly contrary to the mandate of the applicable statute. The judgment of the Circuit Court in so far as it purported to award the defendant wife alimony is therefore void. *Lynch* v. *State, ex rel. Killebrew*, 179 Tenn. 339, 166 S. W. (2d) 397; *New York Casualty Co.* v. *Lawson*, 160 Tenn. 329, 24 S. W. (2d) 881; *Richardson* v. *Mitchell*, 34 Tenn. App. 318, 237 S. W. (2d) 577; Note, 12 A. L. R. (2d) 1059, 1066.

A valid property settlement agreement, which is based upon a sufficient consideration and which does not

give evidence of collusion, can be enforced by the courts, as any other valid contract, even if the husband is granted a divorce from his wife. But the right of the wife and the duty of the husband in such cases arises out of the contract and not out of the marital relation itself, and thus technically is not alimony. *Pewitt* v. *Pewitt*, 192 Tenn. 227, 240 S. W. (2d) 521. The defendant wife alleges that the decree in this case simply incorporated such an agreement, but the record does not support her allegation. The Circuit Court purported to recognize in her a right to alimony. In so doing it exceeded its powers.

But the defendant wife contends that the judgment of the Circuit Court is valid for the reason that the "alimony" awarded her included support for the two minor children placed in her custody. The judgment of the Circuit Court is not clear in this regard. The declaratory part of the judgment provided first, "that the complainant pay from his earnings, as alimony, for the support and maintenance of defendant and said two dependant children, the sum of $125.00 per month * * *." It then provided, "that the equity in the property known as the parking lot held in the joint names of complainant and defendant should be decreed to defendant as alimony." The ordering or mandatory part of the judgment followed the language quoted above as to the monthly payments, but did not specify the basis on which the parking lot was awarded the defendant wife. At no place in the decree was it stated that the parking lot was being awarded to her for the support of the children.

██ An allowance which the husband may be required to pay for the maintenance of the children is distinct from an allowance of alimony to the wife. 17 Am. Jur. 531, Divorce and Separation, Sec. 695. They are based upon altogether different principles. 17 Am. Jur.

462, Divorce and Separation, Sec. 586. A husband may be required to support children placed in the custody of his wife, even though he has been granted a divorce. *Stargel* v. *Stargel*, 21 Tenn. App. 193, 107 S. W. (2d) 520. But the husband cannot be required to pay his wife alimony after he has been granted a divorce. Tennessee Code Sec. 8449.

Since alimony therefore could not ordinarily be construed as including payments for child support, the portion of the judgment awarding the parking lot to the defendant wife as ''alimony'' should not be construed as being for the support of the minor children. If the Circuit Court had intended for the term to have this loose construction with reference to the parking lot, it would have expressly so provided as it did in the case of the monthly payments.

In addition if the Circuit Court had intended that the parking lot should be held and used for the minor children, it could have decreed that title to the property should vest in the children as the Court did in the case of *Cline* v. *Cline*, 186 Tenn. 509, 212 S. W. (2d) 361. Instead the Court purported to vest the title to this property in the defendant wife, and at no place imposed any restrictions on her use of the property or of its profits or proceeds, or in any way indicated that it should be used for the support of the minor children.

In any event it could not be said that the Circuit Court intended the property to be divested out of the husband solely for the support of the minor children.

█ In view of all these circumstances it must be held that the judgment should be construed as purporting to vest title to the parking lot in the defendant wife as alimony as that term is used in Sec. 8449 of the Code. Accordingly the judgment is in that regard void.

Counsel for the defendant wife argue quite forcibly, however, that the complainant husband should be barred from asserting the invalidity of the judgment of the Circuit Court by reason of his failure to challenge that judgment and by reason of the fact that he induced the Court to enter such a decree by asking it to approve the alleged property settlement agreement.

In support of this contention counsel for the defendant wife rely primarily, if not altogether, on the case of *Barber* v. *Barber,* 28 Tenn. App. 559, 192 S. W. (2d) 79. In that case the Circuit Court of Hamilton County concluded that both parties were guilty of cruel and inhuman treatment and entered a divorce granting each an absolute divorce from the other. By that decree certain personal property. was granted the wife as alimony, and the final disposition of the real estate was reserved by the Court. The Court later held that the wife was entitled to the real estate as alimony and so decreed. The husband then filed a motion for a new trial asserting for the first time that since he was also granted a divorce no alimony should be awarded the wife. The motion was denied and the husband appealed to the Court of Appeals. That Court affirmed the decree of the Circuit Court and certiorari was denied by this Court.

It should be observed that the denial of certiorari by this Court did not indicate that this Court approved all the reasons advanced to support the decision of the Court of Appeals, since this Court on application for the writ of certiorari is primarily concerned with the result reached. *Bryan* v. *Aetna Life Insurance Co.,* 174 Tenn. 602, 130 S. W. (2d) 85.

The decision in the Barber case is readily distinguishable from the instant case, since in that case the wife had actually been granted a divorce; and as the Court of

Appeals remarked in its opinion, in such circumstances it is doubtful whether Code Section 8449 has any application. The Court of Appeals based its decision, however, primarily on the ground that Code Section 8449 was for the benefit of the husband and could be waived by him if he did not seasonably assert it. The Court of Appeals then pointed out that Mrs. Barber had been prejudiced by her husband's failure to raise the question at the time of the original decree, since if it had been raised at that time the trial court might have reconsidered its holding that the husband was entitled to a divorce, or, if not, the wife could have laid the grounds for obtaining a review of this finding. Whereas, as matters then stood she was not in a position to obtain such a review. The Court then held that, ''as a matter of simple justice and upon principles of estoppel the contention that alimony should not be allowed because the husband was also granted a divorce comes too late and may not be sustained.'' [28 Tenn. App. 559, 192 S. W. (2d) 80.]

In any event the wife in this case was not similarly prejudiced by the failure of the husband to assert the invalidity of the award of alimony to her. Mrs. Brown did not seek a divorce and was not granted one. She had an opportunity to obtain a review of the decree awarding her husband a divorce and took full advantage of it.

The Court of Appeals did not discuss the question of the validity of the judgment from the standpoint of want of jurisdiction of the subject matter as must be done here. Courts derive their powers to adjudicate not from the parties, but from the law. A Court acting without jurisdiction of the subject matter, or beyond the jurisdiction conferred upon it, is therefore acting without authority of law and its judgments and decrees in so

acting are void and bind no one. *Sheffy* v. *Mitchell*, 142 Tenn. 48, 215 S. W. 403. It necessarily follows therefore that jurisdiction over the subject matter cannot be conferred or enlarged by waiver, consent or estoppel. *James* v. *Kennedy*, 174 Tenn. 591, 129 S. W. (2d) 215; *Cory* v. *Olmstead*, 154 Tenn. 513, 290 S. W. 31; *Jordan* v. *Jordan*, 145 Tenn. 378, 239 S. W. 423; *Petition of Southern Lumber & Mfg. Co.*, 141 Tenn. 325, 210 S. W. 639.

The law with reference to such judgments is well stated in 1 Freeman, Judgments, 643, Sec. 322,

"A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title. It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third person, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judg-

ment was entered or in some other action. The fact that the void judgment has been affirmed on review in an appellate court or an order or judgment renewing or reviving it entered adds nothing to its validity. Such a judgment has been characterized as a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant.''

The same rules are equally applicable when a judgment has been issued in excess of a Court's jurisdiction. ''Irrespective of the character or dignity of the tribunal pronouncing the decision, whether of inferior, limited or superior general jurisdiction, it must confine its determination within the authority it possesses under the law and the case. If ' the Court is exercising special statutory powers the measure of its authority is the statute itself, and a judgment in excess thereof is null and void and subject to collateral attack. * * *'' 1 Freeman, Judgments, 735, Sec. 354.

The complainant husband therefore cannot be said to have waived his right to object to the validity of the judgment of the Circuit Court; nor can he be said to be estopped from so challenging the validity of that judgment by reason of his failure to question the jurisdiction of the Circuit Court, either before or after it entered its judgment.

Nor can the fact that the judgment was affirmed by the appellate courts on the appeal of the defendant wife be said to bar the complainant from now questioning its validity. *New York Casualty Co.* v. *Lawson,* 160 Tenn. 329, 24 S. W. (2d) 881.

Mere delay in and of itself is not sufficient to work an estoppel. The party who claims the benefit of

an equitable estoppel must show some prejudice resulting from the acts of the person against whom the estoppel is urged. Gibson's Suits in Chancery, Section 67. But the defendant wife has not shown, either in her pleadings or in the argument of her counsel in what way, if any, she was prejudiced by the failure of the complainant husband to challenge the jurisdiction of the Circuit Court either before or after it entered its judgment.

 Under the doctrine of judicial estoppel as followed in a long line of cases in this state no showing of prejudice is necessary. But in order for that doctrine to be applicable the party against whom the estoppel is urged must have made a statement of fact under oath which he later seeks to contradict. *Sartain* v. *Dixie Coal and Iron Company*, 150 Tenn. 633, 266 S. W. 313. The complainant husband here does not seek to deny any statement of fact made in the original divorce suit. He does not deny the existence of a property settlement agreement as alleged in his divorce bill. He bases his suit on the theory that the Circuit Court did not adopt such an agreement, but purported to award the defendant wife the property involved as alimony.

 Nor can the complainant husband be said to be guilty of laches in failing to raise this question of jurisdiction at some earlier time, for laches is not based upon mere delay, but upon delay of a character which materially and prejudicially affects rights of the party seeking to invoke the doctrine. *State ex rel. Wilson* v. *Mays*, 190 Tenn. 156, 228 S. W. (2d) 97. The defendant wife here has not shown any such prejudice.

The principles of estoppel and kindred doctrines of equity play an important role in the resolution of the numerous problems arising under our divorce laws. *Loftis* v. *Dearing*, 184 Tenn. 474, 201 S. W. (2d) 655;

*Hamm* v. *Hamm*, 30 Tenn. App. 122, 204 S. W. (2d) 113, 175 A. L. R. 523. It might well be said here that it is undesirable, if not unfair, to allow the complainant husband to challenge the jurisdiction of the Circuit Court which he himself invoked. But hold that he is barred from the relief which he seeks would be contrary not only to the policy of the state as declared by the Legislature, but also to the well settled rules governing the effect of judgments void for want of jurisdiction of the subject matter, and even contrary to the principles of estoppel themselves. These considerations outweigh any resulting unfairness to the defendant wife.

In so holding we have had in mind the limitations upon the functions of courts. " 'Their general duty is not to change, but to work out, the principles already sanctioned by the practice of the past. No one supposes that a judge is at liberty to decide with sole reference even to his strongest convictions of policy and right. His duty in general is to develop the principles which he finds, with such consistency as he may be able to attain.' " *Stack* v. *New York, etc., R. Co.*, 177 Mass. 155, 158, 58 N. E. 686, 687, 52 L. R. A. 328, quoted in *Hamm* v. *Hamm*, 30 Tenn. App. 122, 204 S. W. (2d) 113, 125.

Let the decree of the Chancellor be reversed and the cause be remanded to the Chancery Court of Knox County for further proceedings in accordance with this opinion.

The costs are adjudged against the complainant Clyde O. Brown.

### On Petition to Rehear

The wife Pamelia C. Brown, the original defendant in this suit has filed a very forceful petition to rehear on the grounds:

(1) That the Circuit Court of Knox County had the general jurisdiction to enter the decree awarding the property in issue to the wife as alimony, and in so far as its decree was contrary to the statutes it was merely erroneous and not void; and

(2) That the Chancery Court had no jurisdiction "to change the decree of the Circuit Court."

As was indicated in the original opinion herein, in order for a Court to have the jurisdiction to enter a decree in a particular case it must not only have the general jurisdiction over the subject matter involved and over the parties, it must also have the power to grant the particular relief decreed. *Jordan* v. *Jordan,* 145 Tenn. 378, 239 S. W. 423; *Chickamauga Trust Company* v. *Lonas,* 139 Tenn. 228, 201 S. W. 777. Where there is a limitation upon the general powers of a Court, a decree in contravention to or in excess of that limitation is to that extent void. 21 C. J. S., Courts, Sec. 25, page 37. Section 8449 of the Code imposes such a limitation on the general powers of the Courts of this state with reference to awards of alimony. A decree purporting to award alimony in contravention to that statute is not a mere erroneous exercise of a power conferred, and thus subject only to the prescribed procedures for review and appeal; it is the assumption of a power to act where none exists, and it is to that extent void and subject to attack whenever it is brought in issue.

Section 8446 of the Code provides that when a complainant wife has been awarded alimony, the order or decree remains in the Court's control, and that "on application of either party, the court may decree an increase or decrease of such allowance on cause being shown." Section 8454 provides with reference to decrees for payments for child support that such decrees remain

within the control of the Court and are subject to such changes or modifications as the exigencies of the case may require.

*(25)* These sections were enacted primarily to remove the difficulty which had been encountered with respect to future installments of alimony in cases where a divorce a vinculo had been granted. *Hicks* v. *Hicks,* 26 Tenn. 'App. 641, 176 S. W. (2d) 371. Under the prior law such a decree was final and passed beyond the Court's control after the term at which it was entered and could not thereafter be modified. *Going* v. *Going,* 144 Tenn. 303, 232 S. W. 443. The effect of these sections is to retain decrees for alimony and support within the control of the Court entering them to enable it to make such modifications of them as changed conditions and circumstances may require. *Hicks* v. *Hicks,* 26 Tenn. App. 641, 176 S. W. (2d) 371; *Davenport* v. *Davenport,* 178 Tenn. 517, 160 S. W. (2d) 406.

▆▆▆▆ Thus in this case the Circuit Court of Knox County still retains its jurisdiction to modify or change the provisions of its decree with reference to payments for child support.

▪ ▆▆▆▆ But the Circuit Court of Knox County had no jurisdiction to award the defendant wife alimony in this case. The purpose of this suit is thus not merely to increase or decrease the amount of alimony awarded on the basis of changes in the circumstances of the parties since the rendition of the Circuit Court's decree. Instead it is an attack on the validity of that decree at the time of its entry. It therefore does not fall within the scope of that portion of Section 8446 retaining decrees for alimony within the exclusive control of the Court rendering them.

██ The provisions of Sections 8446 and 8454 are not so broad as to require that all litigation between parties to a divorce suit must be brought in the Court originally entering the decree of divorce. *Coleman* v. *Coleman,* 190 Tenn. 286, 229 S. W. (2d) 341.

The Chancery Court of Knox County had the jurisdiction to enjoin the enforcement of the decree for alimony rendered by the Circuit Court, where that decree was void at the time of its entry. *Scurlock* v. *Scurlock,* 92 Tenn. 629, 22 S. W. 858. The decree for alimony in this regard is no different from any other decree or judgment.

The petition to rehear is denied.