# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 19, 2011

## STATE OF TENNESSEE v. BARRY D. HARRIS, JR.

### Direct Appeal from the Circuit Court for Williamson County
### No. ICR124579     Jeff Bivins, Judge

---

### No. M2010-01466-CCA-R3-CD - Filed November 28, 2011

---

Defendant-Appellant, Barry D. Harris, Jr., pled guilty in the Circuit Court of Williamson County to aggravated assault, a Class C felony, unlawful carrying or possession of a weapon, a Class E felony, and simple possession of a controlled substance, a Class A misdemeanor. The trial court sentenced Harris as a Range I, standard offender to an effective term of six years' imprisonment in the Department of Correction. Harris attempted to reserve a certified question of law under Rule 37 of the Tennessee Rules of Criminal Procedure, addressing whether the trial court erred in denying his motion to suppress evidence discovered as a result of a search of his residence. Because Harris failed to comply with the proper procedure for reserving such a question, we conclude that we are without jurisdiction to consider it. Additionally, Harris appeals the length of his sentence, arguing that the sentence does not conform to the statutory purposes of sentencing. Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed in Part, Judgments of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Sandra L. Wells, Franklin, Tennessee, for the Defendant-Appellant, Barry D. Harris, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tammy J. Rettig, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**I. Certified Question**. As an initial matter, we must determine whether this appeal is properly before this Court. Tennessee Rule of Criminal Procedure 37(b)(2)(A)(i) requires

that the judgment or order reserving the certified question of law be filed prior to the notice of appeal. The record shows that on March 30, 2010, Harris pled guilty to aggravated assault, unlawful carrying or possession of a weapon, and simple possession. Three judgment forms reflecting his pleas were filed on June 21, 2010. None of these referenced a certified question of law. On July 6, 2010, Harris filed a "Motion of Barry D. Harris[, Jr.,] reserving certified question of law pursueant [sic] to Rule 9(b) [sic] from the order denying the motion to suppress the search of his pants on constitutional grounds." In that motion, Harris requested that the trial court "enter an Order allowing a Certified Question under Rule 9 [sic] to proceed." On the same day, July 6, 2010, Harris also filed a notice of appeal of the judgments entered on June 21. On September 30, 2010, an amended judgment was entered on the conviction for simple possession. In the "Special Conditions" section, the amended judgment read, "Plea entered with a certified question of law reserved under Rule 37(b) of the Rules of Criminal Procedure. See Exhibit 1 attached hereto." That exhibit stated, "The defendant enters the pleas[1] pursuant to Rule 37 (d) [sic] of the Tennessee Rules of Criminal Procedure . . . ." and further outlined the certified questions to be presented.

In State v. Pendergrass, 937 S.W.2d 834 (Tenn. 1996), the Tennessee Supreme Court considered a case very similar to this appeal and dismissed the case based on a failure to properly reserve the question before filing notice of appeal. In Pendergrass, the defendant entered guilty pleas to several offenses, and defense counsel informed the trial court that he would be filing a Rule 37 appeal on behalf of his client. Id. at 835. The defendant's January 15, 1993 judgment forms regarding his guilty pleas failed to reference a certified question of law dispositive of the case. Id. On February 12, 1993, the defendant filed his notice of appeal. Id. On February 19, 1993, the trial court entered an order "purporting to note the appeal of a certified question of law." Id. The Tennessee Supreme Court concluded that since the notice of appeal had been filed, the trial court was without jurisdiction to later enter an order purporting to amend the judgment:

> As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed. Tenn. R. App. P. 4(a) and (c); State v. Moore, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991). The jurisdiction of the Court of Criminal Appeals attaches upon the filing of the notice of appeal and, therefore, the trial court loses jurisdiction. State v. Peak, 823 S.W.2d 228, 229 (Tenn. Crim. App. 1991); compare Spence v. Allstate Ins. Co., 883 S.W.2d 586, 596 (Tenn. 1994). Once the trial court loses jurisdiction, it generally has no power to amend its judgment. Moore, 814 S.W.2d at 382. Indeed, it is well-settled that a

---

[1]Although Harris uses the plural "pleas," the issue raised in the certified question appears relevant to only the plea for simple possession based on the marijuana located in Harris' pants. Additionally, an amended judgment was filed only on the simple possession conviction.

judgment beyond the jurisdiction of a court is void. <u>Brown v. Brown</u>, 198 Tenn. 600, 281 S.W.2d 492, 497 (1955).

937 S.W.2d at 837. In <u>Pendergrass</u>, the Tennessee Supreme Court stated that the February 19, 1993 order failed to satisfy the requirements under <u>State v. Preston</u>, 759 S.W.2d 647, 650 (Tenn. 1988). <u>Pendergrass</u>, 937 S.W.2d at 837-38; <u>see Preston</u>, 759 S.W.2d at 650 (Tenn. 1988) (delineating the several requirements for properly reserving a certified question of law, including that "the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review"). The court ultimately concluded, "The attempt at compliance [with the entry of the February 19, 1993 order] was too late, as the trial court lost jurisdiction on February 12, 1993, when the defendant filed the notice of appeal." <u>Id.</u> at 837-38; <u>see also</u> <u>State v. Irwin</u>, 962 S.W.2d 477, 479 (Tenn. 1998) (concluding that an order setting out the certified question of law which was entered after the filing of the notice of appeal failed to comply with <u>Preston</u> and Rule 37).

Under <u>State v. Pendergrass</u>, this appeal must be dismissed. The judgments in this case do not reference a certified question of law. On July 6, 2010, the same day Harris attempted to amend the judgments to reflect the certified question, he filed his notice of appeal with this Court. An amended judgment reserving the certified question of law was filed on September 30, 2010. Because the notice of appeal was filed prior to the amended judgment, the trial court no longer had jurisdiction to amend the judgment. <u>See</u> <u>Pendergrass</u>, 937 S.W.2d at 837; <u>see also</u> <u>State v. Frank Randall Snowden</u>, No. W2005-01851-CCA-R3-CD, 2006 WL 1303946, at *2 (Tenn. Crim. App., at Jackson, May 11, 2006) (stating that "the attempt to cure the defect in the judgment with a supplemental order was a nullity" because the order was filed after the notice of appeal, and the trial court no longer had jurisdiction), <u>no perm. to appeal filed</u>. Accordingly, this Court is without jurisdiction to consider this matter, and the appeal of the trial court's denial of the motion to suppress is dismissed.

**II. Sentencing.** Harris appeals the length of sentence that the trial court imposed. He argues that, "by imposing the maximum sentence for [Harris'] offender range, the trial court failed to adhere to the[] overriding purposes of the sentencing statutes, thereby abusing its discretion." The State asserts that Harris "has waived this issue by failing to include a transcript of the guilty plea hearing or the presentence report." Alternatively, the State argues that the trial court considered the sentencing principles and guidelines and therefore properly sentenced Harris. We agree with the State.

Although we are without the benefit of the guilty plea transcript in the record, the presentence report shows that Harris entered an "open plea" to all counts in the indictment, except count three, the reckless endangerment, which was dismissed. The presentence report further provided that "all aspects of sentencing will be determined by the court at the

sentencing hearing."[2]  The facts giving rise to the instant case, as presented at the motion to suppress, show that around midnight on June 15, 2009, Detective Chad Black of the Franklin Police Department was called to investigate a shooting on Natchez Street in Franklin, Tennessee.  Detective Black interviewed the victim of the shooting, Milton Britton, who explained that he had been in an argument with some people on Acton Street regarding gang activity.  Britton left the area on foot, and several minutes later, someone "jumped out of a vehicle and tried to shoot him with a shotgun."

Detective Black eventually determined that Britton had approached a group of people, including Harris, and offered to sell a car stereo for ten dollars.  After some negotiating, Harris bought the stereo for five dollars.  Harris and his sister then realized that the stereo had been stolen out of her car.  Detective Black located Harris, who provided a statement of admission to the shooting, and took him into custody.

At the sentencing hearing, the State entered the presentence report, without objection from Harris, as exhibit 1.  The report reflects Harris' criminal history which consisted of the following convictions: introduction of contraband into a penal facility, possession of marijuana for resale, driving on a suspended license, and attempted auto burglary.  In October 2005, his probation for the attempted auto burglary was revoked and he was ordered to serve a four-year sentence.

Detective Chad Black corroborated his motion to suppress testimony and stated that the area where the shooting occurred was "very populated", with small homes that were "close together."  Detective Black interviewed Harris' sister, who confirmed that the stereo recovered from the incident belonged to her.  Detective Black also confirmed that Harris claimed responsibility for the instant shooting. Harris told Black that Britton approached him trying to sell a car stereo.  Harris bought it, and he and his sister soon realized that the stereo had been stolen from her car.  Harris became angry, retrieved a shotgun, got into a car with others, and drove to Natchez Street.   After Harris located Britton, he got out of the car and discharged his weapon in the direction of Britton, intending to scare Britton.

The State entered as exhibit 5 certified copies of judgment forms reflecting Harris' convictions for the introduction of contraband into a penal institution and the possession of marijuana for resale.  As exhibit 6, the State entered certified copies of an agreed order placing Harris on a probationary bond before the offense date of the current crimes and a motion to revoke Harris' bond.

---

[2]The presentence report also reflects that Harris had two pending probation violations, case numbers I-CR123831 and I-CR073567-B, scheduled to be heard on the same day as his sentencing hearing.

Harris testified and explained the events leading up to the shooting. He said that he was at his house with some friends when Britton, whom Harris knew as his sister-in-law's uncle, repeatedly came to his house asking for drugs. Harris told him that he did not sell drugs and explained that Britton was "disrespecting my kids that was out there." Britton came to Harris' house again and Harris bought a CD player for ten dollars. Harris testified that while he was installing it, his sister arrived. She jokingly, at first, suggested that the CD player was hers, and then she and Harris realized the CD player did in fact belong to her. Harris confirmed that he then located Britton and ran after him. He retrieved a gun and fired it in the air.

Harris explained that he took the weapon with him when he left to search for Britton only because he had been intending to take it to his mother's house. His "stepson had messed with the gun" when it was in his house, so he wanted to "get [it] away from [his] kids" and "was taking the gun to my momma house anyway." He said that it "so happened that night it was all in the same route." Harris said that when he shot the gun, Britton was already out of sight, having run behind a house. He testified that Britton and the people with him in the car were the only people present nearby at the time he fired the weapon. Harris helped the police find the shotgun he used, despite having some difficulty convincing his family to give officers the gun.

Harris confirmed that he was a former gang member. Prior to his arrest in the instant case, Harris worked for three years detailing cars at Miles Auto Store. He said that he had three children, all three years of age. He paid child support for all three of them and he was in arrears by $5,000. He explained, "That was just to start from when I found out they was mine until I got put on probation. . . . I was paying – they was taking it out of my check where I was working at." He testified that he also helped care for his fiancée's six children.

Harris confirmed that he was on probation at the time he committed the current offenses. He said that he had been reporting on time and passing his drug screens. Harris testified that the drugs found at his residence when he was arrested belonged to a friend. He said, "So I admitted to taking the drugs, but I really I had stopped marijuana. I been doing drug screens [ever] since '08." Harris said that if he were to be sentenced to probation for these offenses, he would live in Davidson County "to get [his] family away from the environment" in Williamson County. When asked if there was anything else he would like to tell the court, he said:

> I mean I apologize for what I did and everything to Milton Britton, and I know what I did was stupid and it was dumb. And, you know, after sitting in jail a year you realize that, you know, you losing everything else so, you know, and really I wasn't a bad person out there. Like I said, I worked every day, took care of my family and that's what I did, you know. This little

incident right – I don't have charges of me going out there shooting at people and trying to kill people. That's not me. That ain't what I do. I had a drug problem and I have came and cleared myself from that drug program, you know, so, you know, I'm at – really, this whole situation I'm in court going for now, that's not me. I don't do stuff like that . . . . But I ended up doing it, it was stupid.

At the time that I did it I was looking at protecting my family, keep him from coming back to my house. I thought if I shoot a warning shot in the air, he won't come back to my house. . . . [B]ut it was stupid for me doing it anyway. I should have left it alone. He wasn't coming back to the house . . . anyway . . . .

Melissa Morton, Harris' fiancée, testified that she had been with Harris for about three and a half years. She had six children, and Harris helped her with their care. She moved from Franklin to Nashville and said that Harris would live with her in Nashville if he were to be released. Morton testified consistently with Harris' testimony concerning the events leading up to the shooting on Natchez Street. Morton visited Harris in jail, and believed that he had changed. He began attending church and Morton had obtained the necessary paperwork for him to apply to "auto diesel college."

At the end of the sentencing hearing, the trial court declined to sentence Harris as a multiple offender due to the State's failure to provide Harris with the required notice. It then considered the presentence report, the testimony presented at the hearing, the statutory sentencing principles, and the enhancement and mitigating factors. The trial court found that three enhancement factors applied to Harris' case: (1) he had a criminal history beyond that necessary to establish the appropriate range, (10) he showed a lack of hesitation in committing a crime when the risk to human life was high, and (13) he was on probation at the time of the offense. See T.C.A. § 40-35-114(1), (10), (13)(C). The court stated that it placed "significant weight" on the first factor, the defendant's criminal history. Regarding the second factor, a lack of hesitation when there was a high risk to human life, the court found that Harris fired a weapon "in a city street in a densely inhabited area." It applied this factor only to the conviction for aggravated assault, and it "place[d] little weight on this enhancement factor." The court stated that it placed "significant weight" on the third factor, that Harris committed the offenses while on probation.

In mitigation, the trial court found one factor: (10) Harris helped the police locate property involved in the crime. See T.C.A. § 40-35-113(10). The court said that it "place[d] little weight on that factor." The court refused to find other mitigating factors advanced by the defense based on its finding that Harris' testimony lacked credibility.

The trial court next considered the guidelines under Tennessee Code Annotated section 40-35-103. Although the court said it was a "close call," the court did not find that confinement was necessary to protect society from Harris based on a long criminal history. See T.C.A. § 40-35-103(1)(A). The court found that the offense was "very serious" and confinement was necessary to avoid depreciating the seriousness of the offense. See T.C.A. § 40-35-103(1)(B). The court found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to Harris. See T.C.A. § 40-35-103(1)(C). The court summarized the evidence in this regard, stating that Harris was on probation when he committed the current offenses, he violated probation in 2005, and he violated probation while a juvenile. The court considered Harris' potential for rehabilitation. See T.C.A. § 40-35-103(5). The court noted Harris' lack of credibility and his repeated references to the offense as "this little incident." It also noted the presentence report's assessment of Harris as being "high risk in need." The court found that these demonstrated a lack of substantial likelihood of rehabilitation.

Based on these considerations, the trial court sentenced Harris as a Range I standard offender to six years for aggravated assault, two years for unlawful carrying of a weapon, and eleven months and twenty-nine days for simple possession, all of which was ordered to be served concurrently. The court sentenced Harris to confinement, finding that the "consideration of . . . alternative sentencing is more than sufficiently overcome."

Harris filed a timely notice of appeal, contesting the length of the sentence the trial court imposed.

**Analysis.** On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Commission Comments. The Tennessee Supreme Court has additionally held that "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). Because the trial court in this case properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness. See Ashby, 823 S.W.2d at 169.

Harris was sentenced as a Range I standard offender to six years for aggravated assault, a Class C felony, which carries a sentence of three to six years. See T.C.A. § 39-13-

102(e)(1); T.C.A. § 40-35-112(a)(3). For the unlawful carrying or possession of a weapon, a Class E felony, punishable by one to two years, the trial court imposed a sentence of two years. See T.C.A. § 39-17-1307(b)(2); T.C.A. § 40-35-112(a)(5). For the simple possession of marijuana, a Class A misdemeanor, punishable by up to eleven months and twenty-nine days, the trial court imposed a sentence of eleven months and twenty-nine days. See T.C.A. § 39-17-418(c); T.C.A. § 40-35-111(e)(1). All of these sentences were ordered to be served concurrently to each other, but consecutively to Harris' two probation violations. Harris' argument pertaining to sentencing is limited, and does not explain in what way the trial court abused its discretion by imposing the effective six-year sentence. Upon our review, the trial court's imposition of an effective six-year sentence on the facts and circumstances of this case is not excessive and was in accordance with the purposes set forth in the Sentencing Reform Act. The record amply supports the trial court's decisions on these matters, and we find no error. Accordingly, Harris' effective six-year sentence in the Tennessee Department of Correction is affirmed.

## CONCLUSION

Upon review, we are without jurisdiction to consider Harris' certified question of law, and it is therefore dismissed. We affirm the sentencing judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE