IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 28, 2011 Session

## NEAL LOVLACE and NORMA JEAN LOVLACE
v.
## TIMOTHY KEVIN COPLEY AND BETH COPLEY

**Direct Appeal from the Chancery Court for Hickman County**
**No. 06-128-C      Robbie T. Beal, Judge**

_____

**No. M2011-00170-COA-R3-CV - Filed February 3, 2012**

_____


        This is a modification of child visitation case, involving grandparent visitation.  The Appellant grandparents appeal the trial court's order, denying their request for more visitation with the minor child, as well as the failure of the trial court to find the Appellee Mother guilty of all alleged incidents of civil contempt.  In the posture of Appellees, the mother and her husband (the child's adoptive father) argue that the Appellants are not entitled to any visitation.  We conclude that in modification of grandparent visitation cases, if the parent is the movant, his or her burden is to show, by a preponderance of the evidence, that there has been a material change in circumstance affecting the child's best interest. However, where the movant is the non-parent, we hold that the grandparent visitation statute provides that the burden is on the non-parent to show, by a preponderance of the evidence, that there has been a  material change in circumstance that would present a substantial risk of harm to the child if modification is denied. Because the trial court incorrectly applied the best interest standard, we vacate its order modifying the visitation arrangement.  We also conclude that the trial court did not abuse its discretion in finding the mother in civil contempt on five counts; however, we conclude that the award of attorney's fees for that contempt is not clear as to what portion, if any, of those fees was expended for prosecution of the contempts, and what portion, if any, was expended in pursuit of the Appellees' attempt to modify the visitation order. Therefore, we also vacate the award of attorney's fees and remand for an award of those fees associated only with the prosecution of the contempts. Vacated in part, affirmed in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Vacated in Part, Affirmed in Part and Remanded**

J. STEVEN STAFFORD, J. , delivered the opinion of the Court.   ALAN E. HIGHERS, P.J., W.S.,

and HOLLY M. KIRBY, J., each filed a separate concurrence and partial dissent.

Thomas F. Bloom, Nashville, Tennessee and Grant C. Glassford, Brentwood, Tennessee, for the appellants, Neal Lovlace and Norma Lovlace.

Rebecca K. McKelvey and Gregory D. Smith, Nashville, Tennessee, for the appellees, Timothy Kevin Copley and Beth Copley.

**OPINION**

The minor child at issue in this case was born on September 4, 2002. She is the biological daughter of Beth Copley and Jerry David Rochelle. According to the Appellees' brief, Mrs. Lovlace and her former husband, Larry Rochelle, adopted Jerry David Rochelle while they were married. Mrs. Lovlace and Larry Rochelle subsequently divorced and she then married Neal Lovlace (together with Mrs. Lovlace, the "Lovlaces," "Grandparents," or "Appellants"); at the time of the hearing, the Lovlaces had been married for fifteen years.

Beth Copley and Jerry Rochelle were married at the time of the child's birth; however, they were divorced by decree of the Chancery Court for Hickman County on April 20, 2004. The final decree of divorce granted primary residential custody to Mrs. Copley, but granted Mr. Rochelle standard visitation. It is undisputed that Mr. Rochelle struggled with drug addiction during the marriage. Consequently, Mr. Rochelle's visitation with the child was to be supervised by the grandparents (i.e., the Lovlaces or Larry Rochelle and his wife), or by Mrs. Copley.

On January 15, 2005, Beth Copley married Timothy Kevin Copley (together with Mrs. Copley, the "Copleys," or "Appellees"). At this time, Mr. Rochelle was incarcerated in the Hickman County Jail. While incarcerated, Mr. Rochelle consented to the minor child being adopted by Mr. Copley. However, this petition was dismissed when Mr. Rochelle withdrew his consent in January 2006. The Lovlaces allege that, because Mrs. Copley believed that Mr. Rochelle's withdrawal of consent was encouraged by the Lovlaces, Mrs. Copley terminated any contact between the Lovlaces and the minor child in February 2006.

On April 24, 2006, the Lovlaces filed a petition for grandparent visitation under Tennessee Code Annotated Section 36-6-306 (the "Grandparent Visitation Statute"). In support of their petition, the Lovlaces averred that, from the time of the child's birth, until just before they filed the petition, they had been an integral part of the child's life. Specifically, the Lovlaces stated that they: (1) kept the child no less than two days per week at the request of Mrs. Copley; (2) provided financial support for the child; (3) had been involved in the child's activities, and (4) had developed a close bond with the child.

A hearing on the Lovlaces' petition was held on April 25, 2006. On May 15, 2006, the trial court entered an "Agreed Order," granting the Lovlaces visitation under the Grandparent Visitation Statute.[1] Specifically, the Lovlaces were granted one Saturday per month from 9:00 a.m. until 5:00 p.m., and an additional two hours of visitation per week during the summer recess. The Lovlaces' visitation was subject to the following, relevant stipulations, which are set out in the Agreed Order: (1) Beth Copley will select the Saturday for visitation and will notify the Lovlaces at least five days in advance; (2) Beth Copley will select the two hour weekly period for summer visitation and will notify the Lovlaces at least thirty-six hours in advance; (3) as the child becomes involved in normal childhood activities, the Lovlaces must yield the portion of their visitation that conflicts with the child's activities, and Mrs. Copley will try to avoid such conflicts in choosing the date and time of visitation; (4) the Lovlaces' visitation time must come from Mr. Rochelle's time . . .; and (5) all parties shall cooperate and endeavor in good faith to effect this agreement in the best interest of the child. No appeal was taken from this Agreed Order.

On March 24, 2009, a Final Order of Adoption (the "Adoption Order") was entered, whereby Mr. Copley adopted the minor child. The Adoption Order specifically acknowledges that Mr. Rochelle consented to the adoption. As is relevant to the instant appeal, the Adoption Order contains the following language:

> It is further ORDERED, ADJUDGED and DECREED by the Court that the entry of this Final Order of Adoption does not alter or modify the grandparent visitation rights of Neal and Jean Lovlace as previously ordered by the Hickman County Chancery Court.

There is no evidence in the record that any appeal was taken from the Adoption Order.

Even before Mr. Copley adopted the minor child, the relationship between the Copleys and the Lovlaces was strained. This is evidenced by the Lovlaces filing a petition for contempt against Mrs. Copley on March 15, 2007. This petition alleges that Beth Copley had violated the Agreed Order on visitation by, among other things, failing to provide the required notice to the Lovlaces. The Copleys answered the first petition for contempt with a motion to dismiss based upon the Lovlaces' alleged failure to provide proper notice in satisfaction of due process. Before a hearing on the petition for contempt and the corresponding motion to dismiss, on February 25, 2008, the Lovlaces were allowed to file an amended petition for contempt. Then, again, on March 9, 2009, the Lovlaces were

---

[1] We note that, at the time of entry of the Agreed Order, Mr. Copley had not yet adopted the child. Consequently, he was not a party to the proceedings giving rise to the Agreed Order.

granted leave to file a second amended petition for contempt and to modify the May 15, 2006 Agreed Order. By their petition, the Lovlaces aver numerous counts of civil contempt against Mrs. Copley. The alleged violations of the May 15, 2006 Agreed Order took place from June 2006 through January 2009. We will discuss the specific allegations below. However, suffice to say, the Lovlaces state that Mrs. Copley repeatedly failed to give them proper notice of visitation as required under the Agreed Order, failed to allow the court ordered visitation on numerous occasions, and generally failed to cooperate and endeavor in good faith to effect the visitation agreement in the best interest of the child. In addition to the allegations of contempt, the Lovlaces' petition also asks the court to modify the Agreed Order on visitation to allow the Lovlaces additional time with the child.

On May 29, 2009, the Copleys filed an answer to the Lovlaces' second amended petition for contempt and to modify, wherein they denied the material allegations of contempt and further moved the court to terminate the Lovlaces' visitation with the minor child. As grounds for terminating the Lovlaces' visitation, the Copleys averred that Mrs. Lovlace had exacerbated the friction between the parties, that the Lovlaces had short tempers, and that visitation was not in the child's best interest. On July 24, 2009, the Lovlaces answered the counter-petition to terminate visitation, denying the material allegations contained therein.

On July 24, 2009, the Lovlaces filed a motion asking the court, *inter alia*, for make-up visitation with the child. Specifically, the Lovlaces argued that their Saturday visitation was denied from December 2008 until March of 2009, and was again denied in July 2009. On August 24, 2009, the Copleys moved the court to suspend the Lovlaces' visitation, pending final hearing. On November 5, 2009, the Copleys filed a motion, asking the court to declare void and of no affect whatsoever the specific provision in the Final Order of Adoption (*supra*), which reserved the Lovlaces' visitation with the minor child after her adoption by Mr. Copley.

On November 17, 2009, the trial court heard some of the pending motions, including the Lovlaces' motion for make-up visitation, the Copleys' motion to suspend visitation pending final hearing and their motion to declare the paragraph of the Adoption Order void. By Order of December 9, 2009, the trial court: (1) denied the Copleys' motion to declare the paragraph of the Adoption Order void; (2) granted the Lovlaces specific Saturday visitation; (3) deferred the Lovlaces' request for make-up visitation to the final hearing; and (4) denied the Copleys' motion to suspend the Lovlaces' visitation pending the final hearing. The Copleys' filed a motion for interlocutory appeal from this order, which motion was denied by the trial court's March 29, 2010 Order. The Copleys' application for extraordinary appeal to this Court, under Tennessee Rule of Appellate Procedure 10, was denied by this Court's Order of April 5, 2010.

The case proceeded to final hearing on June 21 and 22, 2010. Following the hearing, the trial court ruled, from the bench, that Mrs. Copley "did engage in contemptuous behavior and did not operate at all times in good faith." The court went on to state that "[t]he primary punishment that the mother's going to face [for the finding of contempt] is the award of attorneys' fees to the Lovlaces.[2] That award will be reduced to judgment . . . in the amount of $75,000." Before a final order could be entered, on July 19, 2010, the Copleys filed an objection to the award of attorney's fees, alleging that there was no legal basis for the trial court's award of these fees. On September 28, 2010, the trial court heard arguments on the Copleys' objection to the award of attorney's fees. By Order of October 21, 2010, the trial court reduced the award of attorney's fees and costs to $32,000.00.

A final order was entered on January 5, 2011. Therein, the trial court specifically found, in relevant part, as follows:

> 5. Beth Copley has petitioned this Court to terminate the grandparents' visitation rights. The Court finds, however, that there is nothing in the record to warrant terminating or further limiting the grandparents' rights.
>
> 6. [The Lovlaces] seek modification of the Agreed Order Establishing Grandparent Rights to increase the time they have with the minor child. The Court finds no basis in the record to modify the grandparents' visitation schedule to any significant degree.
>
> 7. Based upon the conduct of the mother, however, the Court does believe that a modification is necessary to secure the grandparents the regular visitation they are supposed to have under the Agreed Order and to remove the discretion from the mother and adopt[ive] father.
>
> 8. The Court does find that there has been a material change in circumstances and the relationship of the parties had degenerated to the point where they are no longer able to work together. The Court finds that it is necessary for the Court to mandate certain specific times for grandparent visitation to take

[2] In their second amended petition for contempt and to modify, the Lovlaces requested an award of the "attorney fees and costs, incurred by them in the prosecution of this Petition." During the hearing, the Lovlaces introduced affidavits to support their request for fees and costs.

the discretion out of the hands of mother and adoptive father as to when grandparents visit with the minor child.

9. The Court finds that it is in the best interest [of] the child to mandate certain specific times because the grandparent visitation was an agreement fairly bargained on [and] between the parties.

***

11. The Court finds that it is necessary to expand the visitation just a little bit to make a smoother transition.

Based upon the foregoing findings, the court modified the existing visitation schedule to allow the Lovlaces specific visitation on the third Saturday of each month, and also specified that the summer visitation would commence at 6:00 p.m. on Friday and would end at 6:00 p.m. on Saturday. The court also set a specific place for exchange of the child.

Concerning the Lovlaces' petition for contempt, the January 5, 2011 order states:

22. After consideration of the record, the Court finds that the [Lovlaces] have proven, by a preponderance of the evidence, that Beth Copley is in willful, civil contempt for [failure] to follow[] the Court's order [i.e., the May 15, 2006 Agreed Order] in the following instances:

(a) The Court finds that in January of 2007, Beth Copley failed to provide at least five (5) days written notice for the January 7, 2007 visitation. The Court finds that the *Orders* were specific and that mother is in willful violation of Paragraph 3A of the *Agreed Order*.
(b) The Court finds that in February of 2007, three and one half hours were missed due to a gymnastics class that was not attended or was not regularly scheduled.
(c) The Court finds that Beth Copley's conduct constitutes willful, civil contempt.
(d) The Court finds that in June of 2007, the [Lovlaces'] visitation was missed without cause. Mother is in willful civil contempt.
(e) In July 2007, mother scheduled visitation on a court date that

-6-

the grandparents were required to attend. The Court finds that mother was not operating in good faith and is in willful, civil contempt.

(f) The Court finds that in July, 2007, Beth Copley was in willful, civil contempt of Paragraph 3I and 3J of the *Agreed Order* by her conduct. She is in willful, civil contempt.

(g) Accordingly, the Court finds that Beth Copley is in willful violation of this Court's Order on five separate occasions.

(h) The Court finds that the appropriate sanction for mother's contempt is the award of attorney's fees which has been addressed by separate order.

(i) The Court finds that Mother has engaged in contemptuous behavior and did not operate [at] all times in good faith.

The Lovlaces appeal and raise two issues for review as stated in their brief:

I. Whether the trial court abused its discretion in failing to modify the grandparents' visitation rights in such a way as to assure the continued development of an important and stabl[e] relationship in the child's life.

II. Whether the evidence preponderates in favor of finding the mother in contempt of court on all counts alleged by the grandparents thus warranting make-up visitation times and restoration of the original award of attorney's fees.

In the posture of Appellees, the Copleys raise the following, additional issues for review, which we restate as follows:

I. Whether the Lovlaces' court-ordered visitation should be terminated. The Copleys' argument on this issue is two-fold: (1) whether the trial court incorrectly treated the Lovlaces as "grandparents" under the Grandparent Visitation Statute; and (2) whether the trial court incorrectly enforced the reservation of the Lovlaces' visitation as set out in the final order of adoption.

II. Whether the findings of civil contempt, and the award of attorney's fees thereon, should be reversed.

Although the parties make cogent arguments on these issues, we perceive that there

are actually three dispositive issues, namely:

> 1. Whether the May 15, 2006 Agreed Order is void, *ab initio*, for lack of subject-matter jurisdiction; and, if not

> 2. Whether the trial court applied the correct standard for modification of grandparent (i.e., non-parent) visitation?

> 3. Whether the trial court erred in holding Mrs. Copley in contempt of the Agreed Order; and, if so, whether the award of attorney's fees for that contempt was proper?

### Validity of the May 15, 2006 Agreed Order

The Copleys argue that the Grandparent Visitation Statute's definition of "grandparent" (at Tennessee Code Annotated Section 36-6-306(e)) does not include the Lovlaces. Although not specifically argued by the Copleys, this question rests upon whether the trial court had subject-matter jurisdiction to treat the Lovlaces as grandparents under the statutory definition. It is well settled that this Court is required to consider the subject matter jurisdiction of both this Court and the trial court regardless of whether the existence thereof is presented as an issue. Tenn. R. App. P. 13(b); *Wunderlich v. Fortas*, 776 S.W.2d 953, 957 (Tenn. Ct. App.1989).

The concept of subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy. *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988). Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *see Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Brown v. Brown*, 198 Tenn. 600, 618–19, 281 S.W.2d 492, 501 (1955), and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *See Hicks v. Hicks*, No. 01A01–9309–CH–00417, 1994 WL 108896, at *2 (Tenn. Ct. App. Mar. 30, 1994) (No Tenn. R. App. P. 11 application filed).

A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). It does not depend on the conduct or agreement of the parties, *see Shelby County v. City of Memphis*, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (Tenn. 1963); *James v. Kennedy*, 174 Tenn. 591, 595, 129 S.W.2d 215, 216 (Tenn. 1939), and thus the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. *See Caton v. Pic–Walsh Freight Co.*, 211 Tenn. 334, 338, 364

S.W.2d 931, 933 (Tenn. 1963); *Brown v. Brown*, 198 Tenn. at 618–19, 281 S.W.2d at 501.

Judgments or orders entered by courts without subject matter jurisdiction are void, *see Brown v. Brown*, 198 Tenn. at 610, 281 S.W.2d at 497; *Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991); *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988). The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated. *See* Tenn. R. Civ. P. 12.08. Thus, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal. *See J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 397, 123 S.W. 622, 637 (1909).

Based upon the foregoing law, the fact that the parties originally agreed that the Lovlaces should enjoy visitation with the child under the Grandparent Visitation Statute does not, necessarily, confer jurisdiction on the trial court to treat the Lovlaces as grandparents under the statute if they do not meet the statutory definition. We must, therefore, determine, as a threshold inquiry, whether the Lovlaces can, in fact, be considered grandparents under the statute. Tennessee Code Annotated Section 36-6-306(e) defines "grandparent" as follows:

> (e) Notwithstanding any provision of law to the contrary, as used in this section and in § 36-6-307, with regard to the petitioned child, the word "grandparent" includes, but is not limited to:
>
> (1) A biological grandparent;
> (2) The spouse of a biological grandparent; or
> (3) A parent of an adoptive parent.

The determination of whether the Lovlaces qualify as grandparents under the statute requires us to interpret the Grandparent Visitation Statute. Interpretation of a statute is a question of law, which we review *de novo*, without a presumption of correctness. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). Our role in statutory interpretation is to determine and implement the legislature's intent. *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004).

The most basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. *In re Angela E.*, 303 S.W.3d at 246; *State v. Wilson*, 132 S.W.3d at 341; *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000). The court must ascertain the

legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope. ***State v. Sliger***, 846 S.W.2d 262, 263 (Tenn. 1993); *see* ***Gleaves***, 15 S.W.3d at 802; ***Worley v. Weigels, Inc.***, 919 S.W.2d 589, 593 (Tenn. 1996); ***Owens v. State***, 908 S.W.2d 923, 926 (Tenn. 1995). The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application. ***State v. Blackstock***, 19 S.W.3d 200, 210 (Tenn. 2000) (citing ***State v. Pettus***, 986 S.W.2d 540, 544 (Tenn. 1999)).

As set out in the Copleys' brief, "Ms. Lovlace and her former husband, Larry Rochelle, adopted Jerry David Rochelle when they were married." Although Mrs. Lovlace is not biologically related to the child, it is well-settled that adoptive parents enjoy the same constitutionally protected rights as biological parents. ***Simmons v. Simmons***, 900 S.W.2d 682, 685 (Tenn.1995). Following her adoption of Jerry David Rochelle, Mrs. Lovlace gained the same rights as if she were Mr. Rochelle's biological mother. Consequently, under the law, she is treated the same as if she were the child's biological grandmother. Because an adoptive parent enjoys the same legal standing as a biological parent, we see no reason to distinguish between the two for purposes of grandparent visitation. Therefore, Mrs. Lovlace would come within the statutory definition of "grandparent." Following this logic, Mr. Lovlace, by virtue of his marriage to Mrs. Lovlace, would have the same standing under Tennessee Code Annotated Section 36-6-306(e)(2) to petition the court for grandparent visitation as the spouse of a biological grandparent.

Although we conclude that the Lovlaces are grandparents under the express language of the statute, we note that the Lovlaces arguably need not meet any of the express definitions of grandparent to have standing under the Grandparent Visitation Statute. The statute specifically states that the definition of grandparent "includes, but is not limited to" the three enumerated definitions. Tenn. Code Ann. §36-6-306(e)(2). The word "includes" can be used as a term of enlargement or limitation. *See, e.g.,* ***Thorn v. Mercy Mem. Hosp. Corp.***, 761 N.W.2d 414 (Mich. Ct. App. 2008). Consequently, the question of whether our Legislature intended the term, as used in the Grandparent Visitation Statute, as one of enlargement or limitation rests upon the context in which it is used. Where the word "includes," or "including" is coupled with the phrase "but not limited to," courts, including our own, have generally interpreted the term as one of enlargement. *See, e.g.,* ***Haynes v. Knoxville Utilities Bd.***, 1993 WL 104639 (Tenn. Ct. App. April 8, 1993) (interpreting the words "including but not limited to" to confer broad powers on the Board with respect to employee grievances); ***Owings v. Owings***, No. W2005-01233-COA-R3-CV, 2006 WL 3410702 (Tenn. Ct. App. Nov. 22, 2006) (interpreting the Child Support Guidelines use of "includes but is not limited to" to give a broad definition of gross income, which is not limited to the enumerated categories of "wages, salaries, commissions, bonuses").

Based upon the foregoing, we conclude that, in using the term "including, but not limited to" in the Grandparent Visitation Statute, our Legislature intended "grandparent" to be defined expansively, and, at any rate, did not intend to limit that definition solely to the three enumerated examples of grandparent. Taking an expansive view of the definition of grandparent in the statute, both Mrs. and Mr. Lovlace should be considered grandparents for purposes of grandparent visitation. First, because an adoptive parent has the same rights as a biological parent, an adoptive grandparent like Mrs. Lovlace, should have the same standing as a biological grandparent. Likewise, if the spouse of a biological grandparent is considered a grandparent for purposes of the Grandparent Visitation Statute, then, the spouse of an adoptive grandparent, like Mr. Lovlace, should also have standing. In addition, the record shows that the Lovlaces have enjoyed a close and supportive relationship with the child since her birth. The child knows the Lovlaces as her grandparents, and they have acted as grandparents in their care, support, and love for this child. Given the consistent relationship that has existed between the child and the Lovlaces, we conclude that the trial court's defining the Lovlaces as grandparents under the statute was not outside the scope of the statute, and was not otherwise a contravention of the legislative intent. Consequently, we conclude that the trial court properly exercised its jurisdiction in treating the Lovlaces as grandparents under the Grandparent Visitation Statute.

Having determined that the May 15, 2006 Agreed Order was not void, *ab initio*, based upon a lack of subject-matter jurisdiction, we now address the Copleys' issue concerning whether the reservation of the Lovlaces' visitation in the Adoption Order was proper. As is relevant to the instant appeal, we are specifically concerned with whether the Adoption Order trumps the Agreed Order.

**Reservation of the Lovlaces' Visitation in the Final Order of Adoption**

As noted above, the final order of adoption specifically reserves the Lovlaces' visitation. The Copleys now contend that the adoption statute, specifically Tennessee Code Annotated Section 36-1-121(f), renders the reservation of the Lovlaces' visitation void *ab initio*.[3] This question also requires us to interpret a statute and to read it in context of all other relevant statutory provisions. As discussed in detail above, in interpreting statutes, courts must "ascertain and give effect to the legislative intent without restricting or

---

[3] Again, it is well-settled that adoptive parents enjoy the same constitutionally protected rights as biological parents. **Simmons v. Simmons**, 900 S.W.2d 682, 685 (Tenn.1995). Consequently, following the adoption, Mr. Copley is treated as a biological parent.

expanding a statute's coverage beyond its intended scope." ***Owens v. State***, 908 S.W.2d 923, 926 (Tenn.1995). Issues involving construction of a statute and its application to facts involve questions of law. ***Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.***, 87 S.W.3d 67, 74 (Tenn. 2002). Therefore, the trial court's resolution of these issues is not entitled to the Tennessee Rule of Appellate Procedure 13(d) presumption of correctness on appeal. Rather, this Court will review issues of statutory interpretation *de novo* and will reach our own independent conclusions. ***King v. Pope***, 91 S.W.3d 314, 318 (Tenn. 2002).

Tennessee Code Annotated Section 36-1-121(f) provides:

> (f) The adoptive parents of a child shall not be required by any order of the adoption court to permit visitation by any other person, nor shall the order of the adoption court place any conditions on the adoption of the child by the adoptive parents. Any provision in an order of the court or in any written agreement or contract between the parent or guardian of the child and the adoptive parents requiring visitation or otherwise placing any conditions on the adoption shall be void and of no effect whatsoever; provided, that nothing under this part shall be construed to prohibit "open adoptions" where the adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child; and provided further, that the permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons.

While this section of the adoption statute is clear insofar as it prohibits an adoptive parent from being bound by an order of the adoption court concerning visitation by any other person, we cannot go so far as to say that this section negates any visitation granted under orders of a court other than the adoption court. So, even if we assume, *arguendo*, that the reservation of the Lovlaces' visitation in the Adoption Order is void, *ab initio*, under the provisions of Section 36-1-121(f), this interpretation would not, *ipso facto*, void the grant of visitation under the Agreed Order, which was not entered by the adoption court. In fact, the Grandparent Visitation Statute (under which the Lovlaces were granted visitation in the Agreed Order), and particularly Section 36-6-306(d) thereof, specifically indicates that the Grandparent Visitation Statute, and not the adoption statute (i.e., 36-1-121), applies under

the particular facts of this case. This section provides:

> (d)(1) Notwithstanding the provisions of §
> 36-1-121, if a relative or stepparent adopts a
> child, the provisions of this section apply.
> (2) If a person other than a relative or a stepparent
> adopts a child, any visitation rights granted
> pursuant to this section before the adoption of the
> child shall automatically end upon such adoption.

Black's Law Dictionary 1091 (7th ed. 1999) defines "notwithstanding" as "despite," or "in spite of." Based upon this definition, we interpret this prepositional phrase to mean that, in spite of the adoption statute (i.e., § 36-1-121), if a relative or stepparent adopts the child, then the Grandparent Visitation Statute, as opposed to the adoption statute, is the controlling statute. Consequently, because Mr. Copley is the child's step-parent, under the plain language of Section 36-6-306(d)(1), the provisions of the Grandparent Visitation Statute, and not the provisions of the adoption statute, apply in this case. Accordingly, the order granting the Lovlaces grandparent visitation remained in effect despite the child's adoption by Mr. Copley.

It is well settled that "[a] judgment becomes final in the trial court thirty days after its entry if no post-trial motions are filed." **State v. Mixon**, 983 S.W.2d 661, 670 (Tenn.1999); *see* **Waters v. Ray**, No. M2006-01453-COA-R3-CV, 2008 WL 2557360, at *1 (Tenn. Ct. App. June 25, 2008)). Prior to an order becoming final, a party may object to the contents of the order by filing a motion to alter or amend, or for new trial, under Tennessee Rule of Civil Procedure 59. Once an order has become final, a party may request relief from that judgment under Tennessee Rule of Civil Procedure 60, or a party may appeal a final judgment to this Court for its review. Tenn. R. App. P. 3. None of these options were exercised concerning the Agreed Order. Consequently, that order became a final order. Therefore, as discussed below, the Agreed Order may only be modified if certain requirements are met. We begin our discussion with a review of the relevant law concerning custody and visitation disputes between parents and non-parents.

### Review of Applicable Law on Modification of Child Custody and Visitation Arrangements

It is well settled that "[a] custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." **Scofield v. Scofield**, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing **Young v. Smith**, 193 Tenn. 480, 246 S.W.2d 93, 95 (Tenn. 1952)); **Steen v. Steen**,

-13-

61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); *Long v. Long*, 488 S.W.2d 729, 731–32 (Tenn. Ct. App. 1972). Although "[a] custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made," *Scofield*, 2007 WL 624351, at *3, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Scofield*, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)); *see also Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Here, the trial court applied the modification standard that is applicable in cases involving a petition to modify filed by one parent, seeking to modify the visitation schedule *vis-a-vis* the other parent. In that scenario, it is well settled that modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. §36-6-101(a)(2)(B)–(C); *see also Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstance has occurred. Tenn. Code Ann. §36-6-101(a)(2)(B)–(C); *see also Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). To determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's well-being in a meaningful way." *Cosner*, 2008 WL 3892024 at *4 (citing *Kendrick,* 90 S.W.3d at 570); *see also Cranston*, 106 S.W.3d at 644; *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002).

If the petitioner makes a *prima facie* case for a material change in circumstance, then the court must determine whether a change in custody or visitation is in the best interest of the child. *In re J.C.S.*, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set forth at Tennessee Code Annotated Section 36-6-306(a) to make an initial custody determination, those set forth at Tennessee Code Annotated Section 36-6-404(b) to fashion a residential schedule, and those set forth in Tennessee Code Annotated Section 36-6-307 to be considered in grandparent visitation cases. *Id.*

In the instant case, the applicability of the usual standard for modification of child custody and visitation arrangements is brought into question as we are not dealing with a dispute between two parents, but rather with a modification involving a parent and a non-parent (i.e., the grandparents).

Article I, Section 8 of the Tennessee Constitution protects the privacy interest of [] parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right.

*Hawk v. Hawk*, 855 S.W.2d 573, 582 (Tenn.1993). Because the Tennessee Constitution protects a natural parent's fundamental right to control the care and custody of his or her children, *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002)(citing *Nale v. Robertson*, 871 S.W.2d 674, 680 (Tenn.1994)), "parental rights are superior to the rights of others and continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child." *Blair*, 77 S.W.3d at 141 (citing *O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn. Ct. App.1995)).

The plain language of the Tennessee Grandparent Visitation Statute is in keeping with the foregoing principles and, as such, reflects the superior rights of parents. In order to protect the superior rights of parents, the statute places limitations on the visitation rights of grandparents. First, as previously discussed, the movant grandparent must show that he or she is a grandparent and thus has standing under the statute. Tenn. Code Ann. § 36-6-306(e). Next, the statute provides that "[i]n considering a petition for grandparent visitation, the court shall . . . determine the presence of a danger of substantial harm to the child."[4] Tenn. Code Ann. § 36-6-306(b)(1). In keeping with the *Hawk* line of cases, this mandate protects a parent's superior parental rights to have the care and custody of his or her child by requiring

---

[4] We have noted that the courts have not fully defined the circumstances that would support a finding of a risk of substantial harm to the child. *Sharp v. Stevenson*, No.2009–00096–COA–R3–CV, 2010 WL 786006, at *2 n.2 (Tenn. Ct. App. Mar.10, 2010) (no perm. app. filed ). The term "substantial," however, "connotes a real hazard or danger that is not minor, trivial, or insignificant." *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App.2001). It also "indicates that the harm must be more than a theoretical possibility." *Id*. Although it "need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not." *Id*. Furthermore, the petitioner must prove harm to the specific child that is the subject of the suit, not children in general. *Ottinger v. Ottinger*, No. E2003-02893-COA-R3-CV, 2004 WL 1626253, at *5 (Tenn. Ct. App. July 21, 2004). Additionally, a finding of parental unfitness or of child dependency and neglect by the trial court, and the circumstances identified by the General Assembly in the statutes governing the termination of parental rights, relocation, and grandparent visitation, provide guidance to the courts when determining whether a child would face a risk of substantial harm if not removed from a parent's custody. *Ray*, 83 S.W.3d at n. 6 & 7; *Sharp*, 2010 WL 786006, at *2 n.2.

a heightened "substantial harm" finding before the grandparent may be granted visitation against the parent's wishes. Only upon a finding of substantial harm may the court then consider whether the visitation is in the best interests of the child. Tenn. Code Ann. 36-6-306(c) ("Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in §36-6-307. Upon such determination, reasonable visitation may be ordered.").

Because Tennessee has a statute that specifically allows for grandparent visitation and provides us the standard to be used in making that determination, we conclude that the statute does not limit that standard only to the initial visitation determination; we concede that there is no statutory standard for a subsequent request to modify grandparent visitation. However, in keeping with *Hawk*, in order to protect the parent's superior parental rights, we conclude that the heightened standard of substantial harm used in the initial visitation determination should apply to any subsequent modification of the visitation, as the statute provides no other standard. It is well settled that, "where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision." *Arnwine v. Union County Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn .2003) (quoting *Woodroof v. City of Nashville*, 192 S.W.2d 1013, 1015 (Tenn.1946)). Thus, the provisions of a specific statute will control over conflicting provisions in a general statute. *Id*. Because the Grandparent Visitation Statute specifically addresses grandparent visitation, and because there is nothing in the statute from which we can infer that the Legislature did not intend this statute to apply in subsequent proceedings involving grandparent visitation, we conclude that the statute's substantial harm standard will apply in modification proceedings, such as the one at bar.[5]

---

[5] We note that other jurisdictions have applied different standards in modification of visitation disputes between parents and grandparents. However, in general these cases deal with statutes that, unlike the Tennessee Grandparent Visitation Statute, do not expressly require a showing of substantial harm to establish grandparent visitation. In fact, only one other state expressly requires that the grandparent prove substantial harm in order to gain visitation with a grandchild. *See* Mich. Comp. Laws §722.27b(4)(b) (requiring that the grandparent "prove by a preponderance of the evidence that the parent's decision to deny grandparenting time creates a substantial risk of harm to the child's mental, physical, or emotional health."). In addition, from our research, only five other states' statutes expressly require some showing of harm for a grant of grandparent visitation. *See* Ga. Code Ann. §19-7-3 (requiring that the grandparent prove harm to the child); 750 Ill. Comp. Stat. 5/607 (requiring that the grandparent prove that "the parent's actions and decisions regarding visitation times are harmful to the child's mental, physical, or emotional health"); Iowa Code Ann. §600C.1 (requiring a showing that the parent is unfit to make the decision regarding visitation); Okla. Stat. Ann. tit. 43, § 109.4 (requiring some showing of parental unfitness or clear and convincing proof of harm to the child if visitation is denied); S.D. Codified Laws § 25-5-29 (noting that the presumptive right

(continued...)

[5](...continued)

to custody is only overcome by a grandparent who proves parental unfitness or other extraordinary circumstances, including harm to the child); *see also* N.H. Rev. Stat. Ann. §461-A:13 (noting that the court may consider, but that the grandparent is not required to prove, whether the child's emotional and physical health would be endangered by the grant or denial or visitation.) Other states without an express requirement of harm in their grandparent visitation statute construe the relevant statute to require a showing of substantial harm in order to protect the constitutional rights afforded parents. These cases vary as to whether the superior parental rights doctrine applies in modification proceedings. In many cases, the courts apply the same standard for modification as is applied to establish visitation. However, several of the cases hold that a consent order is valid and enforceable to establish grandparent visitation. *See* ***In re Custody of C.M.***, 74 P.3d 342 (Colo. Ct. App. 2002) (holding that, because of a parent's constitutional rights to the care and custody of their children, the grandparent visitation statute required deference to the parent's wishes, so that the parent's wishes will be given "special weight" in a grandparent visitation case); ***In Matter of R.A.***, 121 P. 3d 295, 298–301 (Colo. Ct. App. 2005) (citing cases from other jurisdictions and noting that constitutional protections afforded to parents require that the "special weight" given to parents under the grandparent statute mandates a showing that either the parents are "unfit[] to make decisions regarding the child's welfare" or that "substantial harm to the child would or could result from denial of grandparent visitation); *see, e.g.,* ***Linder v. Linder***, 348 Ark. 322, 72 S.W.3d 841, 858 (2002); ***In re Marriage of Harris***, 34 Cal.4th 210, 17 Cal.Rptr.3d 842, 96 P.3d 141, 154 (2004); ***Roth v. Weston***, 259 Conn. 202, 789 A.2d 431, 443 (2002); ***Clark v. Wade***, 273 Ga. 587, 544 S.E.2d 99, 107 (2001); ***In re Marriage of Howard***, 661 N.W.2d 183, 189 (Iowa 2003); ***Blixt v. Blixt***, 437 Mass. 649, 774 N.E.2d 1052, 1061 (2002); ***Moriarty v. Bradt***, 177 N.J. 84, 827 A.2d 203, 223 (2003); ***Oliver v. Feldner***, 149 Ohio App.3d 114, 776 N.E.2d 499, 508 (2002); ***Glidden v. Conley***, 820 A.2d 197 (Vt. 2003); ***In re A.M.***, 251 P 3d 1119, 1122–24 (Colo. Ct. App. 2010) (holding that, when a parent seeks to modify grandparent visitation, the parent must prove that a material change in circumstances warrants modification; however, because of the constitutional protection afforded to parents, the burden then shifts to the grandparents to prove, by clear and convincing evidence, that the child's interests will be served only by the visitation that grandparent seeks, including overcoming the special weight given to parental wishes); ***In Matter of Kaiser***, No. 04CO 9, 2004 WL 3090224 at *8 (Ohio Ct. App. Dec. 30, 2004) (noting that Ohio law does not require changed circumstances to modify visitation between two parents; therefore, Father need not show a material change in circumstance to modify grandparent visitation); ***Rennels v Rennels***, 257 P.3d 396 (Nev. 2011) (concluding that parents "are not entitled to [a] presumption [that the parents' desire to restrict visitation is in the best interest of the child] when they seek to modify or terminate a judicially approved visitation arrangement"); ***Lucero v. Hart***, 907 P 2d 198, 2003–04 (N.M. Ct. App. 1995) (holding that, in ruling on a petition for grandparent visitation, the court must consider whether the child's interests are furthered by ordering visitation over the objections of the child's parents and whether the visitation will place the child at the center of family conflict); ***Deem v. Lobato***, 96 P 3d 1186, 1190–92 (N.M. Ct. App. 2004) (holding that the superior parental rights doctrine does not give a parent ultimate veto power over the grant of grandparent visitation, but instead only requires that the parent's superior parental rights be considered in cases where a non-parent seeks to establish or modify custody or visitation with the child); ***Wilson v. McGlinchey***, 811 N.E.2d 526, 529–30 (N.Y Ct. App. 2004) (concluding that, because of the animosity that was caused by the visitation, it was in the child's best interest to terminate the grandparents' visitation); ***Wood v Wood***, 835 So. 2d 568, 573–75 (La. App. 2002) (concluding that the burden is always on the movant grandparents to show that visitation is in the best interest and the parent has no need to present any evidence of harm that could occur because of the asked-for visitation); ***Ingram v. Knippers***, 72 P.3d 17 (Ok. 2003) (noting that while the Oklahoma grandparent visitation statute contained no harm

(continued...)

Therefore, based upon the foregoing discussion, we conclude that the trial court utilized an incorrect standard when hearing the modification petition filed by the Lovlaces. Under the Grandparent Visitation Statute, the trial court should have addressed the question of whether the material change in circumstances, asserted by the Lovlaces, gives rise to a substantial risk of harm to the child. Because the trial court applied the wrong standard (i.e., the best interest standard), we vacate the January 5, 2011 Order on all rulings concerning the modification of the child's visitation schedule. We remand to the trial court for further proceedings, including application of the substantial harm standard.

We note, however, that this case involves competing petitions for modification of grandparent visitation. In the interest of proper adjudication upon remand, we think it is imperative that we determine the proper standard of review, and upon whom the burden of proof falls as between a parent and non-parent in a modification proceeding.

The burden of proof and accompanying standard of review is well settled in modification cases involving two parents. In those scenarios, it is the petitioner who must prove, by a preponderance of the evidence, a material change of circumstance affecting the child's best interest. *See* Tenn. Code Ann. §36-6-101(a)(2)(B)–(C). Nothing in the record or in the Grandparent Visitation Statute persuades us that this standard should be any different when a parent seeks to modify visitation under the Grandparent Visitation Statute. Accordingly, in order to gain their requested modification of the existing visitation scheme, the Copleys will be required to show, by a preponderance of the evidence, a material change of circumstance affecting the child's best interest. *See* Tenn. Code Ann. §36-6-101(a)(2)(B)–(C).

As previously discussed, the Grandparent Visitation Statute requires a showing of substantial harm to the child. Because the statute contains no separate standard for modification, we hold that the standard contained in the statute applies to both the initial

---

[5](...continued)
requirement, constitutional protections afforded parental rights require that the statute be construed to require a showing of potential harm to the child to award grandparent visitation); *see also* **Neal v. Lee**, 14 P.3d 547 (Ok. 2000) (holding that "termination of an existing grandparent visitation order based on agreement of the parties is not subject to collateral attack in a modification proceeding, but that the moving party is required to show a change in circumstances adversely effecting the child's best interest that a change in visitation would improve the child's . . . welfare"); *but see* **Scott v. Scott**, 19 P.3d 273 (Ok. 2001) (wherein majority held that Mother may not collaterally attack the grant of visitation entered by consent, even though the court made no finding of harm in allowing the visitation and required that Mother show a material change in circumstances to modify visitation).

visitation award and any later modification.[6] Accordingly, on remand, the Lovlaces must show, by a preponderance of the evidence,[7] that there has a been a material change in circumstance that would create a risk of substantial harm to the child if modification is not granted.[8]

## Findings of Contempt and Award of Attorney's Fees

As an initial matter, we reiterate that the May 15, 2006 Agreed Order is a valid order

---

[6] We note that many other state statutes fail to provide a separate standard for modification of grandparent visitation once it has been established. In some of these states, the courts have likewise held that the standard to modify should be the same as the standard to establish visitation. *See e.g., In Matter of Kaiser*, No. 04CO 9, 2004 WL 3090224 at *8 (Ohio Ct. App. Dec. 30, 2004) (noting that the test for establishment and modification of grandparent visitation both involve a parent's fundamental right of exclusive control over his or her children; accordingly the standard to modify is the same as the standard to establish visitation).

[7] It is well-settled in Tennessee that when a non-parent seeks *custody* of a child from a parent, the non-parent must prove substantial harm by clear and convincing evidence. *In re R.D.H.*, No. M2006-00837-COA-R3-JV, 2007 WL 2403352, at *6 (Tenn. Ct. App. Aug. 22, 2007) (citing *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App.2001)); *see also Stubblefield v. State ex rel. Fjelstad*, 171 Tenn. 580, 106 S.W.2d 558, 560 (Tenn.1937). However, the Grandparent Visitation Statute contains no requirement that the movant grandparent show substantial harm by clear and convincing evidence to gain *visitation* with the child. The movant grandparent need only show "the presence of a danger of substantial harm to the child." Tenn. Code Ann. §36-6-306(b)(1). Indeed, in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993), the Tennessee Supreme Court stated that "neither the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions." *Id.* at 581. The Court in *Hawk*, however, did not require that the significant harm be proved by clear and convincing evidence. We, therefore, conclude that grandparents seeking visitation under Tennessee Code Annotated Section 36-6-306(c) need only prove substantial harm by a preponderance of the evidence.

[8] We note that this decision is in accord with our sister state, Michigan, whose statute also requires a showing of substantial harm to establish grandparent visitation. Unlike Tennessee, the Michigan statute contains the appropriate standard for modification, stating

> A court shall not modify or terminate a grandparenting time order entered under this section unless it finds by a preponderance of the evidence, on the basis of facts that have arisen since entry of the grandparenting time order or were unknown to the court at the time it entered that order, that a change has occurred in the circumstances of the child or his or her custodian and that a modification or termination of the existing order is necessary to avoid creating a substantial risk of harm to the mental, physical, or emotional health of the child.

Mich. Comp. Laws §722.27b(11). While the standard for modification is not expressly contained in the Tennessee Grandparent Visitation Statute, we conclude that, like Michigan, if the statute requires the movant grandparent to prove substantial harm when establishing visitation, the movant grandparent must also show substantial harm when seeking modification.

-19-

and, as such, Mrs. Copley may be found in contempt for violation of that order, if the requirements for a finding of contempt are met. In ***Overnite Transp. Co. v. Teamsters Local Union No. 480***, 172 S.W.3d 507 (Tenn. 2005), our Supreme Court stated:

> A civil contempt action is generally brought to enforce private rights. *See **Robinson v. Air Draulics Eng'g Co.***, 214 Tenn. 30, 377 S.W.2d 908, 912 ([Tenn.] 1964) . . . .
>
> One may violate a court's order by either refusing to perform an act mandated by the order or performing an act forbidden by the order. If the contemnor has refused to perform an act mandated by the court's order and the contemnor has the ability to comply with the order at the time of the contempt hearing, the court may fine or imprison the contemnor until the act is performed. Tenn. Code Ann. § 29-9-104 (1980 & 2000); *see **Ahern [v. Ahern]***, 15 S.W.3d [73,] 79 [(Tenn. 2000)]. Thus, the contemnor possesses the "keys to the jail" and can purge the contempt through compliance with the court's order. ***Id***.

***Overnite***, 172 S.W.3d at 510–511.

The courts of this State have inherent authority to order punishment for acts of contempt. ***Reed v. Hamilton***, 39 S.W.3d 115, 117–118 (Tenn. Ct. App. 2000). This authority, however, is limited in that the court may only punish as contemptuous the type of acts described in Tennessee Code Annotated Section 29-9-102. ***Id***. at 118. Tennessee Code Annotated Section § 29-9-102 provides, in relevant part, as follows:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> ***
>
> (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
>
> ***
>
> (6) Any other act or omission declared a contempt by law.

-20-

*Id*.

Because "[a]n act of contempt is a willful or intentional act that offends the court and its administration of justice," *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000) (citations omitted), in order to find contempt, the trial court must find the misbehavior, disobedience, resistance, or interference of the party to be willful. *Id*. at 79. "Willfulness" consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006). "A finding of willful conduct must precede a judgment of contempt, and a finding by a court that an act or omission was not willful must preclude a judgment of contempt." *Moore v. Moore*, No. M2004-00394-COA-R3-CV, 2007 WL 2456694, at *3 (Tenn. Ct. App. Aug. 29, 2007). A trial court may only find one in contempt "when the individual has the ability to comply with the order at the time of the contempt hearing." *Ahern*, 15 S.W.3d at 79.

Contempts may either be civil or criminal in nature. *Ahern*, 15 S.W.3d at 78. In proceeding on a petition for contempt, the trial court shall first determine whether it is proceeding to determine criminal or civil contempt. *Cooner v. Cooner*, No. 01-A01-9701-CV-00021, 1997 WL 625277, at *6–7 (Tenn. Ct. App. Nov. 14, 1997). This distinction is important as the trial court cannot proceed on both simultaneously and because of the differences that exist in the rights and protections afforded to defendants, and the differences in the burdens of proof. *Id.*

The purpose of criminal contempt is to vindicate the dignity and authority of the court. *Sullivan v. Sullivan*, 23 Tenn. App. 644, 137 S.W.2d 306, 307 (Tenn. 1939); *see also* Lawrence A. Pivnick, Tennessee Circuit Court Practice § 3:19 (2010 ed.). "Punishment for criminal contempt is both punitive and unconditional in nature and serves to adjudicate 'an issue between the public and the accused.'" *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996) (citations omitted). In a criminal contempt proceeding, the defendant is entitled to the same constitutional protections afforded to a defendant in a criminal trial. *Storey v. Storey*, 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992). Included within these protections is the presumption of innocence and the requirement that guilt be proven beyond a reasonable doubt. *Brooks v. Brooks*, No. M2007-00351-COA-R3-CV, 2009 WL 928283, at * 8 (Tenn. Ct. App. April 6, 2009) (citations omitted). Further, when a proceeding is for criminal contempt, the trial court must ensure that Rule 42 of the Tennessee Rules of Criminal Procedure is followed.

On the other hand, civil contempt is used "where a person refuses or fails to comply with an order of court in a civil case; and punishment is meted at the instance and for the benefit of a party litigant." *Sullivan*, 137 S.W.2d at 307; *see also* Lawrence A. Pivnick,

Tennessee Circuit Court Practice § 3:19 (2010 ed.). As stated by our Supreme Court, [i]f imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order." ***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn. 1996). In a civil contempt case, the contemnor "carries the keys to the prison in his [or her] own pocket . . . ." ***Id***. (citations omitted). Persons found to be in civil contempt, may purge themselves of contempt by complying with the court's order. ***Ahern***, 15 S.W.3d at 78. Civil contempt, contrary to criminal contempt, only requires that the defendant be given notice of the allegation and an opportunity to respond. ***Flowers***, 209 S.W.3d at 611. To find civil contempt in a case such as this, the petitioner must establish that the defendant has failed to comply with a court order. ***Chappell v. Chappell***, 37 Tenn.App. 242, 261 S.W.2d 824, 831 (Tenn. Ct. App. 1952). The determination of whether the respondent violated the order of the court and whether the violation was willful are findings of fact. ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.***, 249 S.W.3d 346, 357 (Tenn. 2008).

It is well settled that a trial court speaks through its orders. ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). Here, the trial court's order specifically states that its findings of contempt are civil in nature. Findings of civil contempt are reviewed under an abuse of discretion standard. ***Konvalinka***, 249 S.W.3d at 357–58. As stated by our Supreme Court:

> An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. ***State v. Lewis***, 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. ***Ballard v. Herzke***, 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. ***Mercer v. Vanderbilt Univ.***, 134 S.W.3d 121, 131 (Tenn. 2004); ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003).

***Konvalinka***, 249 S.W.3d at 358. In reviewing the trial court's finding of civil contempt, we review its factual findings with a presumption of correctness unless the evidence preponderates otherwise pursuant to the standard contained in Tennessee Rule of Appellate Procedure 13(d). ***Id***. at 357.

In this case, the Lovlaces' made the following allegations of contempt against Mrs. Copley:

1.–5.) Denial of Saturday visits: June through October, 2006.
6.) Refusal to allow Mrs. Lovlace to pick the child up on December 1, 2006.
7.–8.) Failure to provide adequate notice of visitation date in January and February, 2007
9.) Shortened visitation time based on alleged gymnastic practice.
10.) Setting visitation on June 8, 2007 despite alleged knowledge of conflict.
11.) June 11, 2007 parking lot incident, involving demeaning behavior.
12.) Setting visitation on July 10, 2007 in conflict with a known court date.
13.) Making disparaging comments about the Lovlaces to the child on or about July 6, 2007.
14.) Demeaning behavior, on July 14, 2007, in returning gifts given to the child by the Lovlaces.
15.–16.) Demeaning language to Lovlaces in child's presence.
17.) Failure to provide adequate notice for October, 2007 visit.
18.) Bad faith violation in scheduling December, 2007 and January 2008 visitations.
19.) Setting make-up visitation on July 2, 2008, despite known conflict.
20.) Denial of weekly summer visitation, week of July 28, 2008.
21.–26.) Denial of Saturday visits, October, 2008 through February, 2009.

As set out in full context above, the trial court specifically found that Mrs. Copley was in willful civil contempt on five of these allegations, specifically:

7.) Failure to provide adequate notice of visitation date in January, 2007.
9.) Shortening the visitation time based upon alleged gymnastic practice.
10.) Setting visitation on June 8, 2007, despite known conflict.
12.) Setting visitation on July 10, 2007, despite knowledge of court date.

14.) Demeaning and threatening behavior in returning gifts on July 14, 2007.

The first question is whether there is adequate proof in the record to support the trial court's findings of contempt and, as the Lovlaces argue on appeal, whether the court erred in failing to find Mrs. Copley in contempt on all twenty-six of the counts alleged by the Lovlaces. In reviewing this question, and for the reasons discussed above, we will apply the abuse of discretion standard.

As briefly discussed above, the facts in the record support a finding that Mrs. Copley did, on occasion, willfully deny or hinder the Lovlaces' visitation with the child. From our review of the entire record, there is sufficient evidence to support the court's findings of contempt for Mrs. Copleys' failure to provide adequate notice of the visitation date that she chose in January, 2007. Moreover, there is no dispute in the record that Mrs. Copley knew about the conflicts that would prevent visitation when she scheduled the Lovlaces' time on June 8 and July 10, 2007. These actions were in direct contradiction to the Agreed Order, which requires Mrs. Copley to avoid such conflicts in choosing the date and time of visitation. Furthermore, there is no dispute that Mrs. Copley knew that the child did not, in fact, have gymnastic practice, but that she used the practice as an excuse to deny the Lovlaces their full, scheduled visitation. Moreover, there can be no doubt that Mrs. Copleys' returning the gifts that the Lovlaces gave to the child was a willful act, which was in direct contradiction to the Agreed Order's mandate that "all parties shall cooperate and endeavor in good faith to effect this agreement in the best interest of the child." From the record as a whole, we conclude that there is sufficient evidence to support the trial court's findings of the five acts of civil contempt on the part of Mrs. Copley.

The question, then, is whether the evidence also supports a finding of additional acts of contempt by Mrs. Copley. Again, we apply the abuse of discretion standard. From our review, the trial court did, in fact, address the ten Saturday visits that Mrs. Copley allegedly denied (Contempt allegations 1 through 5). Mrs. Copley contends that she interpreted the Agreed Order as requiring the Lovlaces to obtain their visitation time from Mr. Rochelle, regardless of whether Mr. Rochelle exercised his visitation. It is undisputed that Mr. Rochelle was not incarcerated during any of the Saturday visits that Mrs. Copley allegedly denied the Lovlaces. Although Mrs. Copley has demonstrated a certain level of bad faith, which has resulted in the loss of some of the Lovlaces' visitation, we concede that the question of whether the Lovlaces' visitation was to be cleared through Mr. Rochelle or Mrs. Copley is somewhat unclear in the Agreed Order. As noted above, that order states that the Lovlaces' visitation time "must come from Mr. Rochell's time . . . ." From this language, it is conceivable that Mrs. Copley could reasonably think that the Lovlaces were required to procure their time from Mr. Rochelle. However, at the time of the alleged willful denial of

the Saturday visits, the record does support a finding that Mrs. Copley's actions were not willful, but were the result of a misreading of the Agreed Order. Therefore, it was not an abuse of discretion for the trial court to conclude that Mrs. Copley was not guilty of civil contempt on these allegations.

Concerning the other allegations of contempt, the trial court did address the two instances where Mrs. Copley allegedly failed to provide adequate notice, but ultimately found that her non-compliance with the Agreed Order was not willful. Our review of the record does not clearly indicate that Mrs. Copley's actions concerning notice were, in fact, willfully perpetrated in contradiction to the Agreed Order, nor does the evidence preponderate against the trial court's implied denial of all remaining allegations of contempt on the part of Mrs. Copley.

Having determined that the actual findings of contempt are supported by the evidence in the record, we now turn to the question of whether the trial court's award of attorney's fees was an adequate and appropriate remedy for the contempts. In ***Robinson v. Gaines***, 725 S.W.2d 692 (Tenn. Crim. App. 1986), the Court of Criminal Appeals described the difference between the punishments for civil and criminal contempt:

> The punishment in a civil contempt is remedial, compelling the doing of something by the contemnor, which, when done, will work his discharge. Civil contempt judgments coerce the contemnor into complying with an order of the court. It is often said that in civil contempt cases, the contemnor has the keys to the jail in his own pocket. *See **Shiflet v. State***, 217 Tenn. 690, 400 S.W.2d 542 ([Tenn.] 1966).
>
> On the other hand, criminal contempts are punitive in character. These proceedings are to vindicate the authority of the law and the court as an organ of society. In criminal contempt cases, the contemnor must serve the sentence imposed whether or not he purges himself by complying with the court order. One convicted of criminal contempt does not carry the key to the jail in his pocket. ***Shiflet v. State***, *supra.*

*Id*. at 694.

As discussed in ***Robinson v. Gaines***, 725 S.W.2d at 694, *supra*, "the punishment in a civil contempt is remedial, compelling the doing of something by the contemnor." ***Id***. To this end, punishments for civil contempt should be designed to "coerce the contemnor into complying with an order of the court." ***Id.*** (relying on ***Shiflet v. State***, 217 Tenn. 690, 400 S.W.2d 542 (Tenn. 1966)).

Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings, both under common law and general statutory provisions and under express statutory provisions dealing with the allowance of attorneys' fees in court proceedings. A.S. Klein, Annotation, Allowance of Attorneys' Fees in Civil Contempt Proceedings, 43 A.L.R.3d 793 (1972); *see also* **In re French**, 401 B.R. 295, 314 (Bkrtcy. E.D.Tenn. 2009) ("Appropriate fines for civil contempt generally include the parties' actual damages incurred and reasonable attorney's fees."); **Battleson v. Battleson**, 223 S.W.3d 278, 287 (Tenn. Ct. App. 2006) ("Regarding attorney's fees, the general rule is that a court may award attorney's fees as a sanction for a properly made finding of contempt."); **City of Chattanooga v. Davis**, 54 S.W.3d 248, 271 (Tenn. 2001) (finding that "civil contempt fines [] are generally regarded as being remedial in nature when (1) the fine is prospectively coercive, or (2) the fine serves to compensate the party injured by the violation of the order").

In the instant case, the trial court initially awarded the Lovlaces' their full request for attorney's fees in the amount of $75,000. The Copleys objected and, after further consideration, the trial court amended the award to $32,000. Although the award of attorney's fees for civil contempt is not improper, the problem in this case is that it is impossible to determine from the trial court's order what portion of the award of attorney's fees is for the prosecution of the contempts, and what portion, if any, was expended in pursuit of the Lovlaces' petition to modify the visitation. Any portion of these fees that was expended for purposes of the petition to modify would be an inappropriate award for civil contempt; however, any portion of the attorney's fees that was expended for purposes of the contempt proceedings would be reasonable, so long as the fees are supported by the evidence. Because we cannot determine the nature of these fees, we vacate the award of attorney's fees, and remand to the trial court for a determination and award of those fees associated only with the contempt proceedings.

As noted above, the purpose of punishments for civil contempt should be designed to "coerce the contemnor into complying with an order of the court." **Robinson v. Gaines**, 725 S.W.2d at 694. To this end, it would have been reasonable for the trial court to award make-up visitation in favor of the Lovlaces for any visitation they may have missed as a direct result of Mrs. Copley's contempts. There is no explanation in the court's order as to why it denied this request. Based upon the particular findings of contempt, the amount of visitation missed by the Lovlaces would be easily attainable. The question of whether the Lovlaces should be granted make-up visitation would, of course, depend upon the trial court's determination, upon remand, of whether the Lovlaces are entitled to prospective visitation. If the trial court determines that the Lovlaces have met their burden to show, by a preponderance of the evidence, a material change in circumstance such that substantial

harm would come to the child if the Lovlaces are not granted visitation, it would be appropriate for the court to consider the award of make-up visitation. However, if the court determines that the Lovlaces have not met their burden, then make-up visitation would not be an appropriate award. We mention make-up visitation only to note that our holding herein does not, *ipso facto*, preclude the trial court's consideration of the make-up visitation issue on remand. We note that, whether the trial court determines (upon remand) that the award of make-up visitation is warranted or not, it should explain the grounds for its decision in its order.

For the foregoing reasons, we vacate the trial court's order concerning all matters related to visitation, and also vacate its award of attorney's fees against the Copleys. We remand the case for further proceedings consistent with this Opinion. The order of the trial court is affirmed in all other respects. Costs of this appeal are assessed one-half to the Appellants, Neal Lovlace and Jean Lovlace, and their surety, and one-half to the Appellees, Timothy Kevin Copley and Beth Copley, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE